Jacob Betten and Minnie Betten, Appellants, v. Jeanette Eddy Williams et al., Appellees.

Gen. No. 37,504.

Opinion filed November 5, 1934.   Rehearing denied November 19, 1934.

DITCHBURNE & LOUNSBURY, for appellants; CHARLES E. LOUNSBURY, HARRY S. DITCHBURNE and PHILIP H. KELLEY, of counsel.

MORRIS H. COHEN and MARK D. COHEN, for appellee Jeanette Eddy Williams; CASTLE, WILLIAMS, LONG & McCARTHY and MORRIS H. COHEN, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is an appeal by plaintiffs from an order of the circuit court dismissing their bill for want of equity

which was entered upon motion of the defendants and a stipulation as to certain facts.

The principal controversy is concerned with the proceeds of certain insurance policies on the life of Charles M. Eddy, deceased. Plaintiffs are the executors and residuary legatees of Mabel M. Eddy, deceased, the former wife of Charles M. Eddy, and seek to have these proceeds impressed with a trust in their favor although the policies are payable to the insured's daughter, Jeanette Eddy Williams, hereafter called defendant. Aetna Life Insurance Company filed a general demurrer but stands ready to pay the proceeds of the policy in its company in accordance with the decree of the court.

The bill alleges that on May 17, 1928, Charles M. Eddy was solvent and on that date a decree of divorce was entered at the suit of Mabel M. Eddy, his wife, in the superior court of Cook county. The decree provides that Charles M. Eddy was to pay to Mabel M. Eddy $125,000, without interest, on or before April 1, 1938; upon the payment of this amount Mrs. Eddy was to return to Mr. Eddy all securities held by her or deposited for her benefit; Mr. Eddy was also ordered to pay her the sum of $9,000 a year in monthly instalments until $125,000 should be paid; that such monthly payments were not to be deducted from or credited upon the sum of $125,000; it was ordered that the decree shall be in full force notwithstanding either party dies; that if Mrs. Eddy should die before receipt of the full amount provided for in the decree, the balance thereof should be paid and disposed of as she may by her last will and testament direct, and if Mr. Eddy should die before all payments have been made, then the balance should be charged against his estate; he was ordered to deposit 1,000 shares of stock of R. M. Eddy Foundry Company as security for the payments ordered to be paid to Mrs. Eddy; the order

contained a provision for the sale of this security in the event of a default and that upon entry of the decree all dower or other rights that each of the parties might have in the properties of the other should terminate and be annulled and each of the parties should henceforth hold and own his own property free and clear of any claim of the other whatsoever.

The bill further alleges that after the entry of this decree of divorce Charles M. Eddy conspired with defendant Jeanette Eddy Williams, his daughter, and Jean Williams, to prevent Mabel M. Eddy and her heirs, executors and assigns from collecting said $125,000, and that in furtherance of said conspiracy Eddy gave to said Jeanette Williams a large number of shares of stock in the R. M. Eddy Foundry Company and changed the beneficiary in certain life insurance policies to his daughter, and acquired other life insurance policies in which his daughter, the defendant, was named the beneficiary.

The bill alleged that November 10, 1930, Charles M. Eddy died, leaving a last will and testament, and that the daughter, defendant, was appointed executrix of his will, and that his estate is still in the course of probate in the probate court of Cook county; that subsequently, on January 31, 1932, Mabel M. Eddy died leaving her last will, in which plaintiffs are named as executors and residuary legatees; that during her lifetime Mabel M. Eddy filed in the probate court a claim for money due her in accordance with the terms of the decree of divorce against the estate of Charles M. Eddy, the deceased; this claim was not disposed of during her lifetime, but plaintiffs as her executors filed an amended claim in the probate court which was duly allowed August 31, 1933, for $135,400, on which $9,400 has been paid, leaving a balance of $126,000 due and payable on account of said claim.

The bill alleges that at the date of the decree of divorce Charles M. Eddy was solvent and well able

to pay Mabel M. Eddy the sum of $125,000; that among his assets were shares of stock of the R. M. Eddy Foundry Company and a large amount of life insurance purchased by him prior to the entry of the decree of divorce; that these policies were payable to his estate upon his death and that by changing the beneficiary in these policies from his estate to his daughter, the defendant, and by subsequently investing moneys in payment of life insurance premiums upon other policies in the Aetna Life Insurance Company, also payable to his daughter, he rendered his estate insolvent. It is alleged that the stocks and securities in his estate were at the time of his death of a face value less than the claims filed against his estate, exclusive of plaintiffs' claim, and that the securities were worthless.

The bill asserts that defendant has collected a considerable amount of cash and securities and also moneys on account of said policies; that she is an adult of more than 21 years of age, in good health, and well equipped to provide for her own support and maintenance; that any obligation upon Charles M. Eddy to provide for his daughter's support after his death was secondary to his obligation to pay the money provided to be paid in the divorce decree to Mabel M. Eddy, and that the transfer of stocks and securities to the defendant and the payment of premiums on insurance for her benefit was fraudulent as to Mabel M. Eddy, and that the proceeds of said insurance became impressed with a trust in favor of plaintiffs in payment of the decreed debt. The bill charges that defendant is a spendthrift and has squandered a large part of the proceeds of the insurance policies; that neither Jeanette Eddy Williams nor Jean Williams has any assets to pay any judgment that might be rendered against them, except the property aforesaid.

The bill seeks an accounting to determine the amount of moneys received by defendant as the pro-

ceeds of life insurance policies, and asks that such amount may be impressed with a trust in favor of plaintiffs; that defendants be required to pay plaintiffs such sums as may be found due and that defendants be enjoined from disposing of any of the moneys received from Charles M. Eddy during his lifetime or from the proceeds of life insurance policies.

The motion to dismiss charged that the bill of complaint did not state a case entitling plaintiffs to the relief prayed. Upon the hearing it was stipulated that the estate of Charles M. Eddy was still pending in the probate court; that the indebtedness of his estate was approximately $300,000, including the claim of plaintiffs of $125,000, and the claim of the defendant Jeanette Eddy Williams of $119,000, and that the face value of the securities in the estate amounted to $308,000. After hearing the chancellor ordered that the bill be dismissed for want of equity.

All parties have treated this as a creditors' bill, and defendants argue that the bill fails to show that plaintiffs have pursued or exhausted their legal remedies, and that under the rule in this State such showing must be made before a creditors' bill can be maintained. *Strauss v. Phillips,* 189 Ill. 9; *Goodman v. Kopperl,* 169 Ill. 136. Plaintiffs' claim was allowed in the probate court August 31, 1933, and the estate is still pending there. The instant bill was filed October 4, 1933, shortly after the claim was allowed. The bill does not allege that the estate of Charles M. Eddy was exhausted, that distribution has been made or the estate declared insolvent. The statute, chap. 3, sec. 129 (Cahill, ¶ 131) directs the probate court, upon finding an estate insolvent, to enter an order of insolvency. Apparently no such order has been entered. The chancellor found that plaintiffs had not exhausted their remedies in the probate court, nor was it shown that when the estate is wound up there would not be

sufficient to pay the creditors. This finding of the chancellor was justified.

We are also of the opinion that the chancellor properly found that the allegations of conspiracy and fraud were insufficient. There is much language in the bill asserting that the defendants and Charles M. Eddy conspired to prevent Mabel M. Eddy from collecting the amount provided for her by the divorce decree, and that he provided for his daughter by life insurance policies which were in fraud of the rights of Mabel M. Eddy and thus rendered his estate insolvent. But in view of the allegations of the bill and stipulation of facts, such words are merely a statement of conclusions without any foundation of fact. It is well settled that facts showing a conspiracy or fraud must be stated in the bill. *Doose v. Doose,* 300 Ill. 134; *Felt v. United States Mortgage & Trust Co.,* 231 Ill. App. 110. And where facts stated in a bill are not such as to amount to fraud a demurrer thereto does not admit fraud, and the allegations of fraud are construed most strongly against the pleader. *Wandschneider v. Wandschneider,* 282 Ill. 286. It is a reasonable conclusion from the record that Charles M. Eddy was wealthy and that after settling upon his divorced wife a large sum of money, with securities deposited to insure the payment of this sum, he naturally and properly undertook to provide for his daughter.

The stipulation of facts does not show that the creditors will not receive the amount of their claims; in fact the affirmative showing is to the contrary. The allegations of the bill that the assets of Mr. Eddy's estate are practically worthless—worth only 10 cents on the dollar—is a clear conclusion. No attempt is made to value the stocks and securities.

It should be noted that the defendant Jeanette Eddy Williams paid to certain creditors of her father a con-

siderable sum so that equities in securities pledged by him could be preserved for the benefit of the creditors of his estate. This accounts for her claim against her father's estate in the sum of $119,000.

A motion to dismiss a bill is treated as a general demurrer, admitting the truth only of all facts properly pleaded as distinguished from conclusions, and every allegation is to be taken most strongly against the pleader. *Rosenzweig v. Roitman,* 266 Ill. App. 124; *Leonard v. Arnold,* 244 Ill. 429. The court specifically found that the allegations in the bill with reference to the claims against the estate of Charles M. Eddy and with reference to the securities in his estate fail to show that plaintiffs were entitled to the relief sought.

It is also a strong point against the position of plaintiffs that in the decree of divorce it was provided that: "Upon the entry of this decree, all dower or other rights that each of the parties hereto may have in the properties of the other shall terminate and be annulled, and each of the parties hereto shall henceforth hold and own his or her own property, free from any and every claim whatsoever, of the other." It should be remembered that 1,000 shares of stock of the Eddy Foundry Company were deposited in escrow as security for the payment to Mrs. Eddy of the amounts provided for in the divorce decree. Apparently she was satisfied with this arrangement. Nothing is shown as to what disposition has been made of these shares of stock. It is not alleged that Mr. Eddy did anything which affected their value. The only allegation is that he did certain things with reference to the balance of his estate, which, however, the decree of divorce specifically reserved to him. The decree provided that Mrs. Eddy released all her rights in the other properties of Mr. Eddy and that Mr. Eddy could own his property and convey it as he wished. Agreements of this sort have been held valid. *Crum v. Sawyer,* 132

Ill. 443; *Luttrell v. Boggs,* 168 Ill. 361; *Edwards v. Edwards,* 267 Ill. 111; *Weinebrod v. Rohdenburg,* 343 Ill. 318.

Plaintiffs argue that, by the provision in the decree that any unpaid balance due Mrs. Eddy should be a charge against his estate, the moneys settled on Mrs. Eddy should, in the event of the death of Mr. Eddy, be a claim against his estate. We are not inclined to adopt this construction. Rather, it seems to us, it was the intention of the parties that Mrs. Eddy should look first to the pledged securities for the payment of the sum due her, and that after these had been exhausted, and if there was a deficiency, the balance was to be a charge against Mr. Eddy's estate. *Birney v. Solomon,* 348 Ill. 410, cited by plaintiffs, involved a conveyance of real estate and it was held that the conveyance might be set aside as in fraud of creditors where it was shown that the grantor was at the time of the conveyance in shortened circumstances and became a bankrupt shortly thereafter. Such facts are absent from the instant case. None of the cases cited by plaintiffs involves a creditor whose claim has been secured.

Although respective counsel have argued at some length as to the insurance policies, we are of the opinion that the greater weight of authority supports the right of a parent to obtain insurance policies in a reasonable amount on his life in favor of a child, regardless of whether or not the insured is insolvent. In chap. 73 on Insurance, par. 342, Illinois Statutes (Cahill) 1933, it is provided that it shall be lawful for any wife to take out insurance policies on the life of her husband, and, in case of her surviving, the amounts payable on the policies shall be free from the claims of the representatives of the husband or of any of his creditors. In *Cole v. Marple,* 98 Ill. 58, Cole, the husband, while insolvent and one day before his death, assigned to his wife a life insurance policy payable to

his estate. Upon his death a creditor's bill was filed seeking to reach the proceeds of this policy. The court held that it was not a fraudulent assignment as against his creditors, and that under the provisions of the statute, which should be construed liberally, the proceeds of the policies were exempt from the creditors. In *Houston v. Maddux,* 179 Ill. 377, Houston, while insolvent, obtained an insurance policy upon his life, payable in the event of his death to his wife. A creditor sought the benefit of the proceeds of the policy. The court held that the statute referred to is in the nature of an exemption law, to be liberally construed, and includes cases where the husband procured for his wife insurance on his own life, as he will be presumed in so doing to act for her and as her agent. *Ramsey v. Nichols,* 73 Ill. App. 643, involved an insurance policy for the benefit of the widow and children. The court held that the statute in question should be fairly construed to include a policy obtained by a father for the benefit of his children, saying that the trend of authority was toward the conclusion that an insolvent debtor may carry a reasonable amount of insurance for the protection of his family and that in the absence of fraudulent intent on the part of both the insured and the beneficiaries the creditors can have no right either in the proceeds of the insurance or to a recovery of the amount of the premiums paid. See also, to the same effect, *Central National Bank of Washington City v. Hume,* 128 U. S. 195.

Plaintiffs cite *Merchants' & Miners' Transp. Co. v. Borland,* 53 N. J. Eq. 282; *Fearn v. Ward,* 80 Ala. 555, and *Lehman v. Gunn,* 124 Ala. 213. As to the first case, we find in *Lanning v. Parker,* 84 N. J. Eq. 429, the opinion states that subsequent to the opinion in the case of *Merchants' & Miners' Transp. Co. v. Borland, supra,* the New Jersey legislature enacted a statute modeled on the insurance statute of the State

of Massachusetts, supporting life insurance policies in which the wife and children are beneficiaries and exempting them from the claims of creditors. The Massachusetts statute was upheld in *Bailey v. Wood,* 202 Mass. 549. The same can be said of the cases in Alabama, where now by statute the proceeds of insurance policies payable to the children may not be reached by creditors. *Brasher v. Breen & Gardien Ins. Agency,* 222 Ala. 585; *Young v. Thomason,* 179 Ala. 454.

The opinion in the recent case of *Gurnett v. Mutual Life Ins. Co.,* 356 Ill. 612, is against plaintiffs' position. In that case Knowlton Ames procured life insurance policies on his life the proceeds of which were to be held in trust for his heirs at law; certain creditors by bill sought to have the proceeds of these policies impressed with a resulting trust in favor of the estate of Ames, to be paid out by the executors of his will. The court held against the creditors. The opinion says: "A policy of life insurance is not deemed an asset of the estate of the insured unless it is made payable to him, his executors or administrators. The mere fact that the insured may change the beneficiary does not make the policy or its proceeds a part of his estate. Neither the policies nor their proceeds constituted a part of the estate of Knowlton L. Ames, deceased." In the light of this opinion plaintiffs cannot maintain their bill. The chancellor properly dismissed the bill, and for the reasons above indicated the judgment is affirmed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.