**Henry W. Farnum et al., Surviving Partners of the Copartnership Formerly Trading as Farnum, Winter and Company, Appellants, v. American National Bank and Trust Company of Chicago, Successor Trustee, et al., Appellees.**

**Gen. No. 40,051.**

 Heard in the second division of this court for the first district at the April term, 1938. Opinion filed April 23, 1940. Rehearing denied May 7, 1940.

WILSON & McILVAINE, of Chicago, for appellants; J. F. DAMMANN, CHARLES Y. FREEMAN and SIDNEY K. JACKSON, all of Chicago, of counsel.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, ANAN RAYMOND, WILLIAM R. SWISSLER and ROBERT Z. HICKMAN, all of Chicago, for appellees.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiffs, as creditors of Knowlton L. Ames, deceased, filed their bill to set aside, as in fraud of his creditors, a certain insurance trust made by Ames. The American National Bank and Trust Company of Chicago, as Successor Trustee, etc., and all of the other defendants, save the insurance companies, the Trustees of Princeton University, and "Unknown Owners" demurred generally and specially to the amended bill of complaint as finally amended. The trial court sustained the general and special demurrer to the amended bill as amended and entered a decree dismissing the bill for want of equity. Plaintiffs appeal.

The verified amended bill of complaint, filed February 11, 1937, alleges, *inter alia,* that Knowlton L. Ames carried a brokerage account with plaintiffs for many years prior to December 2, 1930, the date of the insurance trust agreement in question; that on that date he was indebted to Farnum, Winter & Co. in the sum of $410,285.77; states, upon information and belief, that at the time the trust was made, Ames was insolvent; that his general indebtedness, which included some $3,000,000 in debts on account of notes and accounts payable in addition to the indebtedness to Farnum, Winter & Co., exceeded his assets by more

than $1,000,000; that he was also subject to various contingent liabilities growing out of guarantees and endorsements in the amount of approximately $2,500,000; that he carried a large amount of life insurance, represented by some 33 policies issued by nine companies and of the total face value of $1,441,000; that on said date he was the owner of and retained the beneficial interest in the entire insurance covered by the policies referred to; that the trust agreement executed on December 2, 1930, and the amendments executed April 2, 1931, and June 25, 1931, are attached to the amended bill and made parts thereof as Exhibits I, II and III, respectively; (here follow certain allegations as to the provisions of the trust as modified and amended, all of which sufficiently appear from the opinions of this court and the Supreme Court in the case of *Gurnett v. Mutual Life Ins. Co.,* 268 Ill. App. 518, 356 Ill. 612) that none of the beneficiaries of the trust gave anything of value in consideration for the gifts, conveyances and trusts provided for in the trust agreement, as so modified and amended; that said trust agreement, modifications and amendments thereto, between Ames and said trustee, were executed by Ames with intent to deceive and defraud his creditors, including plaintiffs, of their said claims, and the trust agreement, modifications and amendments thereof, and all of the beneficial interests and gifts created and given thereby are fraudulent and void as to plaintiffs; alleges that the insurance companies which are or were indebted to the trustee under the trust agreement, as so modified and amended, by reason of the insurance contracts referred to in said trust agreement, modifications and amendments, the dates and numbers of the insurance contracts, and the face amounts of said contracts, are as set forth in Schedule "A" attached to Exhibit I; that prior to the execution and delivery of said trust agreement dated December 2, 1930, the beneficiary in each of the policies designated in Schedule

"A" attached to said agreement, and in each of which policies Ames had reserved the right to change the beneficiary named therein, was the Central Trust Company of Illinois, as trustee under a trust agreement dated November 29, 1927, between said trust company and Ames; that on December 2, 1930, prior to the execution and delivery of the trust agreement of that date, Ames, in accordance with the provisions of the trust agreement dated November 29, 1927, revoked and terminated the trust agreement of said last mentioned date in its entirety and thereby directed Central Trust Company of Illinois, as trustee, to deliver all of said insurance policies above mentioned to him; that thereafter, on December 2, 1930, Ames deposited said policies with said trust company as trustee under and pursuant to the trust agreement dated December 2, 1930, and subsequently, while insolvent as aforesaid, changed the beneficiary in each of said life insurance contracts to Central Trust Company of Illinois, as trustee under and pursuant to said trust agreement, retaining and reserving unto himself the right to change the beneficiary in each of said policies; that said trust company, as trustee under the trust agreement dated December 2, 1930, remained the beneficiary under each of said policies thereafter until and after Ames' death, on December 23, 1931; states, upon information and belief, that on December 23, 1931, Ames shot and killed himself; that on or about April 2, 1931, Ames, while still insolvent and indebted to plaintiffs as aforesaid, modified and amended the trust agreement dated December 2, 1930, as shown by Exhibit II; that on or about June 25, 1931, Ames, while still insolvent and indebted to plaintiffs as aforesaid, further modified and amended the provisions of the trust agreement dated December 2, 1930, shown as Exhibit III. As to the exhibits attached to the amended bill: Exhibit I recites the trust agreement of December 2, 1930, which sufficiently appears from the opinions of the Appellate

and Supreme Courts in the *Gurnett* case. Exhibit II recites a certain modification and amendment of the trust agreement, which also sufficiently appears from the said opinions in the *Gurnett* case. Exhibit III relates to a modification and amendment of the trust agreement executed by Ames on June 25, 1931. The amended bill further alleges that Ames left a will, which was admitted to probate by the probate court of Cook county in January, 1932, and the claim of plaintiffs, in the sum of $379,561.65, was allowed by the probate court on February 27, 1933; that the estate appealed to the circuit court, where the claim of plaintiffs was allowed in the sum of $411,816.89; that the estate then appealed to the Appellate Court (*Ames v. Farnum,* 285 Ill. App. 97), where the order of the circuit court was affirmed on April 22, 1936; that no appeal was prosecuted therefrom; that the estate of Ames was insolvent; that his liabilities exceeded his assets at the time of his death by approximately $5,000,000. The prayer of the amended bill seeks to have the trustee and the beneficiaries under the trust state the amount of money, etc., received by them or either of them from the insurance policies in question; that the trust agreement of December 2, 1930, as modified and amended, be declared null and void, and that any funds received by the trustee from the said policies be paid to plaintiffs in satisfaction of their claim; that the interest in the trust of Mrs. Ada Howell Ames be declared null and void to the extent of the premiums paid on the policies and that the amount of said premiums so paid be paid to plaintiffs on account of their claim and judgment. The last amendment to the bill, made on July 16, 1937, alleges that while Ames was so indebted and insolvent on December 2, 1930, and prior thereto and until the time of his death, with intent to defraud his creditors, including plaintiffs, he paid to the various insurance companies on account of insurance premiums on the policies in question a sum

in excess of $100,000, that such premiums were in fraud of and to the prejudice and damage of plaintiffs, and that such payments contributed to the insolvency of Ames.

The general and special demurrer to the amended bill as amended filed by American National Bank and Trust Company of Chicago, as successor trustee, and other defendants, contains, in addition to a general demurrer, 25 special grounds of demurrer.

In the view that we have taken of this appeal it is necessary for us to refer to only one of the special grounds urged, viz: ''The proceeds are not available to creditors for the reason that the policies were at no time, by the allegations of the amended bill itself, assets of the deceased or payable to him, his executors or administrators.'' In support of this special ground of demurrer the defendants demurring cite *Gurnett v. Mutual Life Ins. Co.*, 268 Ill. App. 518; id., 356 Ill. 612. After a careful consideration of the important question involved in this special ground of demurrer we have reached the conclusion that the special ground of demurrer is a meritorious one, and that the trial court was justified in dismissing the bill for want of equity upon that ground alone. At the time of the argument of the general and special demurrer to the amended bill as amended the parties entered into written stipulations that the defense of *res judicata* might be considered at the demurrer stage of the proceedings, and that the pleadings and the opinion of the Appellate Court in the *Gurnett* case and also the opinion of the Supreme Court in that case should be considered as if in evidence under a special plea. The amended bill in the *Gurnett* case was filed by complainants ''on behalf of themselves and any and all creditors, claimants, legatees and heirs of the said Knowlton L. Ames as their respective interests in the effects of the estate . . . may, from time to time, appear . . . .'' In that bill it was alleged: ''1. That the plaintiffs had been

creditors of Ames since 1928, and that they were creditors on December 2, 1930, and that on said date they began an action at law against Ames. 2. That on said date of December 2, 1930, the date of the alleged transfer, Ames was insolvent. 3. . . . 'that in and about the month of December 1930, while the said Knowlton L. Ames was insolvent, that is to say, while the debts due and owing from the said Knowlton L. Ames to various and sundry individuals were grossly in excess of the assets of the said Knowlton L. Ames, the said Knowlton L. Ames caused many of the said policies to be made payable to the Central Trust Company of Illinois as Trustee under a trust agreement dated December 2, 1930, and which is known as Trust No. 10069.' [This is the same trust agreement that is involved in the instant proceeding.] 4. '. . . and your orators hereby specifically waive any primary lien that they have or may have upon the proceeds of said insurance policies. . . .' 5. That the bill was filed . . . 'on behalf of themselves and any and all creditors or claimants, legatees and heirs . . . as their respective interests in the effects of the estate . . . may appear and who wish to join in this suit.' '' The bill further alleged that the trust agreement of December 2, 1930, and amendments thereto did not conform to the legal requirements for the disposition of property *inter vivos,* because there was no disposition by Ames during his lifetime of any interests in the life insurance policies to the trustee; that there was no actual *corpus* of the trust while Ames lived, as the result of which the trust failed, and that the proceeds of the policies rightfully belonged to the executors and should be impressed with a resulting trust in favor of the estate. To quote from the opinion of the Supreme Court (p. 614): ''The relief prayed for was: (1) to have the trust agreement and the amendments thereto entered into by Knowlton L. Ames and the Central Trust Company of Illinois, as trustee, declared void; (2) to enjoin the two named insurance companies from pay-

ing to the trustee the proceeds of certain policies they had issued; (3) to restrain the trustee from disposing of the proceeds of other policies paid to it, and (4) to order the trustee to hold the proceeds of the several policies under a resulting trust in favor of the estate of Ames and to pay such proceeds to the executors of his will.'' To further quote from said opinion (pp. 618, 619): ''Ames, the creator of the trust assailed, made his insurance policies payable to a trustee and contemporaneously executed a trust agreement providing for the administration and disposition of the proceeds of the policies. The trustee promised to perform the duties of administering the trust according to the provisions of the agreement, and the policies were placed in its possession. The policies were contracts between the insured and the insurers for the payment of stipulated sums by the latter to the trustee as the nominee of the insured upon the happening of a certain contingency, namely, the death of Ames. (I Biddle on Insurance, p. 5; 1 Joyce on Insurance, (2d ed.) sec. 7). The premiums paid by Ames constituted the consideration for the promises made by the insurers. Their obligations to pay and the right of the trustee to receive the proceeds of the policies, upon the happening of the contingency specified, were determined when the companies noted upon the face of the policies the exercise, by the insured, of his right or privilege to change the beneficiaries. The date of the death of the insured merely fixed the time when the obligation of the insurers to pay and the right of the beneficiary to receive the proceeds of the policies became enforcible. (*Frick v. Lewellyn*, 298 Fed. 803). The trust agreement and the change of beneficiaries, however, became effective during the lifetime of the settlor. The continuing right to receive the proceeds of an insurance policy is not impaired by the unexercised right or privilege of the insured to designate another beneficiary. (Richards on Insurance, (4th ed.) p. 565; *Tyler v. Treasurer*, 226 Mass. 306). The designation

of a beneficiary in a policy of life insurance creates an inchoate gift of the proceeds of the policy, which, if not revoked by the insured in his lifetime, vests in the beneficiary at the time of the former's death. (*Travelers' Ins. Co. of Hartford v. Fancher,* 26 P. (2d) (Cal.) 482). A policy of life insurance is not deemed an asset of the estate of the insured unless it is made payable to him, his executors or administrators. The mere fact that the insured may change the beneficiary does not make the policy or its proceeds a part of his estate. Neither the policies nor their proceeds constituted a part of the estate of Knowlton L. Ames, deceased. Since his death the trust agreement is merely evidence of the trustee's contract under which it must collect the policies and hold the proceeds for the purposes of the trust." The Supreme Court cites a number of cases in support of its ruling. To further quote from said opinion (pp. 622, 623) : "The reservation of the power to revoke an entire trust does not invalidate the agreement presently creating it or render it testamentary. (*People v. Northern Trust Co.,* 289 Ill. 475; *Kelly v. Parker,* 181 id. 49; *Mayer v. Tucker,* 102 N. J. Eq. 524; *Dolan's Estate,* 279 Pa. 582). The plaintiffs in error concede the validity of the provision reserving power to the settlor to terminate the trust agreement in whole or in part. Naming new beneficiaries in one or more of the policies would have produced precisely the same effect as the termination of the trust with respect to such policies. The power to designate another beneficiary in an insurance policy is a privilege personal to the insured. The powers and privileges reserved do not affect the obligations of the insurers to pay the proceeds of the policies to the trustee upon the death of the insured." The complainants in the *Gurnett* case alleged that the estate was insolvent and the suit was prosecuted for the benefit of the creditors of Ames. The ultimate object of the bill in that case was to obtain a holding that the proceeds

of the policies in question rightfully belonged to the Ames estate and that the trustee should be ordered to pay the proceeds to the executors of that estate. The Supreme Court decided in the *Gurnett* case that neither the policies nor their proceeds constituted a part of the estate of Knowlton L. Ames, deceased, and that after his death the trust agreement is merely evidence of the trustee's contract under which it must collect the policies and hold the proceeds for the purposes of the trust. The title to the proceeds of the policies in question in that case—the same policies that are involved in the instant case—was definitely fixed by the Supreme Court ruling. In our judgment the decision in the *Gurnett* case is adverse to a contention raised by plaintiffs that the payment of premiums on the insurance policies in question by Ames, while he was insolvent, was in fraud of his creditors and that, in any event, the proceeds of the policies should be available to the creditors to the extent of the premiums paid by Ames on the policies while he was insolvent.

The position of plaintiffs in the instant case, that because their bill is a creditors' bill, pure and simple, the *Gurnett* case does not affect their right of action, is, in our judgment, without merit. The ultimate purpose of the instant bill is the same as the ultimate purpose of the bill in the *Gurnett* case, viz., to have the proceeds of the policies made available to the payment of Ames' debts. *Betten v. Williams*, 277 Ill. App. 353, *involved a creditors' bill* brought by the executors and residuary legatees of the divorced wife of a deceased husband to impress with a trust for the payment of an amount owing to the wife under the decree of divorce the proceeds of life insurance carried by the husband and payable to his daughter. The trial court dismissed the bill for want of equity. The plaintiffs in that case charged that the payment of premiums on the life insurance was fraudulent as to the deceased's wife and that the proceeds of the insurance became

impressed with a trust in favor of plaintiffs for the payment of the amount owing to the wife under the decree of divorce. The *Betten* case, also the *Gurnett* case, was decided by the First Division of this court. In the opinion of this court in the *Betten* case it is said (p. 363): "The opinion in the recent case of *Gurnett v. Mutual Life Ins. Co.*, 356 Ill. 612, is against plaintiffs' position. In that case Knowlton Ames procured life insurance policies on his life the proceeds of which were to be held in trust for his heirs at law; certain creditors by bill sought to have the proceeds of these policies impressed with a resulting trust in favor of the estate of Ames, to be paid out by the executors of his will. The court held against the creditors. The opinion says: 'A policy of life insurance is not deemed an asset of the estate of the insured unless it is made payable to him, his executors or administrators. The mere fact that the insured may change the beneficiary does not make the policy or its proceeds a part of his estate. Neither the policies nor their proceeds constituted a part of the estate of Knowlton L. Ames, deceased.' In the light of this opinion plaintiffs cannot maintain their bill. The chancellor properly dismissed the bill, and for the reasons above indicated the judgment is affirmed." The interpretation of the decision in the *Gurnett* case by the First Division coincides with our own. The Supreme Court denied a petition for leave to appeal in the *Betten* case (277 Ill. App. xiv).

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

JOHN J. SULLIVAN, P. J., and FRIEND, J., concur.