Karl Vieth, Receiver, Appellant, v. Chicago Title and Trust Company, Trustee et al., Appellees.

Gen. No. 41,270.

Opinion
filed November 20, 1940.   Rehearing denied December 11, 1940.

SARSFIELD COLLINS, of Chicago, for appellant.

ANDERSON & CLARKE, of Chicago, for certain appellee.

FRANK E. DINGLE, of Chicago, for certain other appellees.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

The appeal in this case by the plaintiff is from an order entered November 14, 1939, overruling plaintiff's exceptions to the master's report, and the order entered on November 22, 1939, dismissing suit of plaintiff and the amended complaint therein, for the reason that plaintiff had not proven the allegations of his amended complaint or fraud, or the badges of fraud, therein alleged.

In April, 1935, plaintiff filed his complaint in equity to recover the whole of the proceeds of certain life insurance policies on the life of Albert T. Kramer, deceased, and held in trust by the Chicago Title and Trust Company for the benefit of Ruth E. Kramer and

Margaret Kramer, daughters of Albert T. Kramer, deceased. Kramer died October 5, 1932, and his wife died on December 24, 1931, and on March 8, 1932, Albert T. Kramer established a trust of certain life insurance policies, to be held in trust by the Chicago Title and Trust Company, as trustee, making the beneficiaries of his insurance his daughters. The plaintiff's amended complaint alleged his appointment as receiver in November, 1933, of the Commercial Oil Company, whose business was that of wholesaling and retailing gasoline and motor oils. The complaint further alleged that on February 25, 1929, a notice was sent out for a director's and stockholder's meeting to consider the assumption by the Commercial Oil Company of the payment of all premiums on $70,000 of life insurance on Kramer's life; that it was there disclosed that Kramer carried $100,000 of life insurance and that the company had been paying the premiums since June 14, 1924; and that at said meeting it was proposed to release $30,000 in favor of Emma Kramer, wife of Albert T. Kramer, and that such a resolution was passed providing that the balance of $70,000 of insurance should be for the benefit of the corporation and the premiums paid by the company. It is further alleged that the company did pay the premiums until Kramer's death and that thereafter Kramer, finding himself uninsurable, during his lifetime, failed to make the corporation the beneficiary and executed the insurance trust with the Chicago Title and Trust Company, as trustee; that Ruth E. Kramer and Margaret G. Kramer were the beneficiaries of the insurance trust; that Kramer hid the facts from the stockholders and directors and that after his death they found that Emma Kramer during her life was the beneficiary of all of Kramer's insurance; that at no time was the corporation beneficiary and alleged that therefore the corporation had been defrauded. It is further alleged that $62,659.85 was paid to the Chicago Title and Trust Company as trustee and beneficiary of the insurance.

The complaint then prayed that all the insurance be turned over to the plaintiff.

It is charged by the defendants that the plaintiff's complaint contains no allegation or charge that Albert T. Kramer was ever insolvent at any time and did not allege that there was any assignment to the Commercial Oil Company; did not allege any acts charging the Chicago Title & Trust Company or Ruth E. or Margaret G. Kramer with any acts of fraud; did not allege that the plaintiff had exercised any remedies at law and showed on its face that the Commercial Oil Company and the plaintiff were only common, unsecured creditors without any judgment or decree against Kramer. The complaint alleged that during her lifetime, Emma Kramer, was at all times beneficiary of all the policies and alleged that the Commercial Oil Company was never at any time made a beneficiary.

The answer of the Chicago Title & Trust Company as amended and the amended answer of the defendants, Ruth E. Kramer and Margaret G. Kramer, denied all the material allegations of the plaintiff's complaint except that the insurance had been paid to the Chicago Title & Trust Company and that Ruth E. and Margaret G. Kramer were the beneficiaries of the insurance trust. The Chicago Title & Trust Company alleged by way of new and additional matter in its affirmative defense that the books of the corporation were always open to an inspection by its officers, directors and stockholders, and that at no time were they hidden or changed or altered; that no fraud had been committed and that in all instances where checks of the corporation were used to pay premiums, that the amounts thereof were charged against the account of Albert T. Kramer on the books of the company and that at the time of his death the corporation was indebted to Kramer in a large amount of money after all the premiums had been charged to his account.

The defendants, Ruth E. and Margaret G. Kramer filed an amended answer to the amended complaint of the plaintiff and denied all the allegations and conclusions of fraud and all the other allegations of the plaintiff's complaint as amended except that they were beneficiaries of the insurance and charged that they had no knowledge of the alleged fraud and that they were not present at the time of the alleged transactions and took no part therein; that they had no knowledge of the insurance trust until after their father's death and then alleged new and affirmative matters of defense.

It appears from the statement of facts in the briefs that between 1925 and 1931 Albert T. Kramer took life insurance policies on his life in the aggregate amount of $100,000, some of which policies lapsed and some others were canceled after loans of the entire cash value were made. All of Kramer's policies when originally issued, were made payable to Emma Kramer, his wife. She died December 24, 1931. Kramer died October 5, 1932. On March 8, 1932, Kramer changed his policies and made the Chicago Title & Trust Company beneficiary as trustee under its trust No. 28778 for the benefit of his daughters Ruth and Margaret. The Commercial Oil Company was never a beneficiary nor assignee of any of Kramer's policies.

After Kramer's death the Chicago Title & Trust Company collected $62,659.85 of proceeds on the policies held in trust. The insurance trust was created more than three years before the plaintiff filed his suit in 1935 and the trust was in the usual form and provided for periodical payments to the daughters, Ruth and Margaret Kramer, until such time as they arrived at the age of 35 years.

The Commercial Oil Company was organized in 1923, and Frank Payne was its president until 1926, when Kramer succeeded him as president. Kramer owned

353 shares of the capital stock of the corporation and at the time of his death Kramer had purchased the shares of Payne, Kimse and others so that Kramer and his family owned 477 shares of the capital stock. Walter C. Fisher, who in 1929 had held 13 shares of capital stock, had become deceased and William E. Frye who had owned 10 shares of the capital stock in 1929 continued to hold his shares. Outside of these 23 shares all the capital stock was held by Kramer and his family and certain officers who held shares to qualify them for their positions. All the shares that were transferred after 1929 were purchased and held by Kramer or his family. After Kramer's death, his estate was probated in Cook county in October, 1932. Kramer was never insolvent and his estate is not insolvent.

Plaintiff complained that on or about June 14, 1924, there was a meeting of the stockholders and directors of the Commercial Oil Company and claimed that at that time a resolution was passed providing that $70,000 of insurance on Kramer's life should be held for the benefit of the corporation and that $30,000 of it should be held for the benefit of Kramer's wife, Emma Kramer. The minutes of the meeting of June 14, 1924 contain no reference to insurance. Plaintiff further contended and alleged that on February 9, 1929, a similar resolution was passed by the directors and stockholders. The minutes of those meetings were admitted in evidence and it appears that no mention of insurance was made in the minutes of those proceedings. Plaintiff further complained that on March 4, 1929, at a special meeting of the board of directors a resolution was supposed to have been passed dealing with the subject matter of insurance. The minutes of that meeting do not mention the subject of insurance. Plaintiff next claimed that on February 9, 1929, the board of directors improperly increased Kramer's salary to $1,000 per month, and further alleged that also

on February 9, 1929, a special meeting of the stockholders of the Commercial Oil Company was held and had approved the preceding meeting of the directors and improperly increased Kramer's salary to $12,000 per year and made it retroactive at the rate of $1,000 per month from February 9, back to January 1, 1928, and thereby claimed that the said retroactive salary was improper and unlawful and that Kramer should be charged with the alleged unlawful retroactive salary. The plaintiff, however, did not in his amended complaint mention these resolutions concerning retroactive salary. In fact, the retroactive salary was never collected or paid for the year 1928.

The plaintiff sought by parol testimony to vary and alter the foregoing minutes of the meetings of the stockholders and directors of June 14, 1924; February 9, 1929; and March 4, 1929, and sought to show by parol testimony that those resolutions should have contained provisions that $70,000 of insurance was to be held for the corporation and $30,000 for Kramer's wife. The master held that the minutes could not be altered or amended in a collateral attack and also held that the evidence and testimony submitted by the plaintiff was insufficient to show that the minutes of those several resolutions should have contained any resolution on the subject matter of Kramer's insurance. Plaintiff then introduced as exhibits ledger sheets of Kramer's personal account with the Commercial Oil Company, which ledger sheets showed that all premiums that were paid by checks of the Commercial Oil Company were charged to Kramer's personal account as a debit and that at the time of Kramer's death there was a credit balance in his favor, after deducting all the debits of life insurance premiums to his personal account. Those ledger sheets showed a net credit to Kramer on December 31, 1932, of $3,111.71, but after his death, October 5, 1932, and on and from October 31, to December 31, 1932, a number of items which

are unexplained and uncontested by the plaintiff were also debited to Kramer's personal account after his death, and by or under the direction of the officers then in charge. Deducting these later items, the ledger sheets show that on September 30, 1932, Kramer had a credit of $17,229.89, after deducting all of the insurance premiums debited to his account. Plaintiff's exhibit 1 of January 15, 1937, shows that on June 14, 1924, the corporation owed Kramer $13,579.10. He was then given $9,900 of stock and a note for $3,679.10. It does not appear that plaintiff disputed these items, but merely charged that those resolutions should have contained a provision about insurance. Many of Kramer's policies were not taken out until five years after the above meeting of the stockholders on June 14, 1924. Plaintiff's exhibit 1 of January 15, 1937, contains the minutes of the board of directors of March 4, 1929, and at page 99 the corporation became indebted to Kramer for property purchased for the company's station No. 5 in the amount of $21,508.85, and no question is raised by plaintiff about any unlawful purchase of this property. The master found that between 1928 and 1932 the corporation had owed Kramer the aggregate sum of $30,771.82, and that the corporation books indicated that at all times during that period the company was indebted to Kramer for more than the amount Kramer owed on any premium advances and found that the above figures did not include the unpaid back salary increase which was given Kramer on February 9, 1929. The master also found that Kramer had made loans on his policies in the amount of $7,586.32 which he had advanced as a loan to and for the use of the corporation.

The plaintiff sought to use the equitable principle of following money or property into other money or property and thereby sought to take the proceeds of Kramer's life insurance on the ground that premiums on his policies had been paid by checks of the Com-

mercial Oil Company. Defendants pleaded that the proceeds of the insurance were exempted property, that Kramer was never insolvent, that his estate was not insolvent, and that the premiums had been charged to Kramer's personal account with the corporation and that he always had a greater credit than the debits on his personal account with the corporation and that he did not owe the corporation any money whatsoever for premiums paid on his insurance.

It is urged by the defendants that the proceeds of life insurance policies on Albert T. Kramer's life, paid to the Chicago Title and Trust Company as trustee, and held in trust for his two daughters are exempted property, and cannot be taken away by any creditor of Kramer, even if he had died leaving any creditors; and rely on the statute of March 26, 1869, Smith-Hurd's Ann. Stat. 1935, ch. 73, sec. 231; Cahill's Stat. 1935, sec. 342, claiming that it created an exemption of the entire proceeds of life policies payable to the wife or children of any insured person, and that under this statute, only premiums paid by the insured when insolvent, could be recovered by creditors of the insured and that insolvency of the insured had to be both pleaded and proven by the creditor who must have been a creditor at the time premiums were paid during insolvency of the insured. The theory upon which the plaintiff filed his suit is upon the equitable principle of tracing money or credits and the proceeds of physical properties into other money, credits or physical properties and thereby sought to apply that equitable principle to recover the proceeds of life insurance upon the alleged ground that the payment of premiums had been made on Albert T. Kramer's life insurance with moneys or checks upon the Commercial Oil Company.

The plaintiff sought to apply the equitable principle of tracing money or property into other money or property, and thereby sought to apply that equitable

principle to recover the proceeds of life insurance upon the ground that the payment of premiums had been made on Albert T. Kramer's life insurance with checks of the Commercial Oil Company. The defendants pleaded that the proceeds of the insurance were exempted property, that Kramer was never insolvent, that his estate was not insolvent, that the premiums had been charged to his account with the corporation, and that he always had a greater credit than the debits on his personal account with the corporation, and that he did not owe the corporation any money for premiums paid on his insurance.

In filing his suit, the plaintiff sought to recover the principal or proceeds of the policies on Kramer's life, originally payable to Emma Kramer, his wife, and after her death made payable to Chicago Title & Trust Company under the trust, as set forth in the statement of facts herein, to be held as a spendthrift trust for the sole use and benefit of Ruth E. Kramer and Margaret G. Kramer, his daughters. It is suggested that in filing the suit the plaintiff entirely overlooked the statute of March 26, 1869, as well as the common-law decisions of this State which created an exemption of the proceeds of life insurance payable to a wife or child or to a trustee for a wife or children, and wholly overlooked a well-settled principle of the law, that the equitable principle of tracing money or physical properties into other money or physical properties cannot be applied in dealing with the proceeds of life insurance.

The rule is and has been recognized by our Supreme Court that the proceeds of life insurance are not an asset even to the insured. In fact, they do not come into existence until after death. During life the insured could not by any suit recover the proceeds, and claim them as his own. The creditor can have no right where the insured possessed none. A man's life is not property; of it he can make no gift; neither can he

assign; nor can a creditor take it in payment of a debt. The fund, called proceeds, which is created with and after the act of death, is not such a fund as to which the equitable principle of tracing funds can be made to apply. The funds known as proceeds are not created by any voluntary or wilful act of the insured, nor by any omission on his part, and that being so, fraud in the ordinary sense cannot be even shown or proven. The act of death usually is wholly involuntary and against the will of the insured, and the act of death in itself is not a fraud on anyone. The creation of the so-called proceeds by the act of death is not, therefore, a violation of the statute of frauds and perjuries because that statute applies to physically existing properties, money or credits, which may become the matter of debts and credits and may be handled in the channels of commerce at large. This statement that we have quoted is made in one of the briefs in this litigation.

We will now deal with the question of the right to recover the proceeds of insurance both under the statute and under the common-law decisions, and also discuss the question of the recovery of premiums. The statute of March 26, 1869, was repealed in 1937 when the present Insurance Act was enacted. The death of Kramer occured in 1932, and the provisions of the present act are not applicable to the present case, except in so far as the new and later statute shows the public policy, with reference to insurance proceeds payable to a widow, children or dependents of the insured. For convenience, we quote the statute of March 26, 1869, which is as follows:

"It shall be lawful for any married woman, by herself, and in her own name, or in the name of any third person with his assent as her trustee, to cause to be insured for her sole use the life of her husband, for any definite period, or for the term of his natural life; and in case of her surviving such period or term, the

sum or net amount of the insurance becoming due and payable by the terms of the insurance, shall be payable to her, to and for her own use, free from the claims of the representatives of the husband or of any of his creditors: Provided, however, that if the premium of such policy is paid by any person with intent to defraud his creditors, an amount equal to the premiums so paid, with interest thereon, shall inure to the benefit of said creditors, subject, however, to the statute of limitations. The amount of the insurance may be made payable, in case of the death of the wife before the period at which it becomes due, to his, her, or their children, for their use, as shall be provided in the policy of insurance, and to their guardian if under age."

The Supreme Court of Illinois very early interpreted the statute and extended the exemption therein created to all cases, where the husband himself, should take out policies for the benefit of either his wife or children or both, and in the case of *Houston v. Maddux,* 179 Ill. 377, the Supreme Court in part said: "This statute is in the nature of an exemption law and should be liberally construed. (*Cole v. Marple,* 98 Ill. 58.) Hence, it contemplates and includes cases where the husband procures for his wife a policy on his own life. In such case he is presumed to act for her and as her agent. (*Felrath v. Schonfield,* 76 Ala. 199.)" It also appears that in *Cole v. Marple,* 98 Ill. 58, the exemption statute again came up for interpretation. Here was a suit by creditor's bill, by one Marple against the widow of the insured and against the Equitable Life Assurance Society and others including the executor of the estate of Cole, to reach proceeds of a $10,000 life insurance policy. The policy was made payable to insured or his executor or administrator. Shortly before his death, the insured assigned the policy to his wife and the insurance company consented to the assignment. The wife was not

made a beneficiary in the ordinary way and it was contended that the assignment of the benefits did not give the protection of the statute which applied only to cases where she was made the beneficiary. The estate of Cole, the insured, was wholly insolvent and Marple, the creditor, had probated his claim against Cole's estate. The trial court decreed that Mrs. Cole pay the full amount of the policy received from the Equitable Society with interest at 6 per cent from the day she received the money. The sole question was whether or not the assignment of the policy when the insured was insolvent was a transaction which was authorized by the statute, or whether or not the transfer was a voluntary conveyance that could be set aside as being fraudulent. In this case the Supreme Court said:

"Here is a statute which empowers a wife, in her own name, or in the name of a third party, to obtain a policy of insurance on the life of her husband, and, in case of his death, the amount of the insurance shall go to the wife free from the claims of the husband's creditors. There is but one saving provision in the statute in favor of creditors, and that is where a person pays the premium on the policy with the intent to defraud his creditors, an amount equal to the premium so paid, and not barred by the statute of limitations, may be recovered." And again on page 65, the court said: "Now, while the act which allows the wife to hold a policy of insurance on the life of her husband, and protects her in the proceeds of the policy as against the creditors of her husband, is not strictly an exemption law, yet it is of that nature, and should be construed with the same liberality.

"But we are not without authority on this question. In *Charter Oak Life Ins. Co. v. Brent,* 47 Mo. 419, where a statute similar to our own was under consideration, it is said: 'The statute was founded on charity, and intended to subserve a beneficient object, and in a case falling within it, I should be disposed to

give it the most favorable construction to carry out its humane principle.' '' The court then speaks of the constitutional provision that the general assembly shall pass liberal Homestead and Exemption Laws, and said: ''At the time the assignment was made, had Mrs. Cole taken out a new policy on her husband's life, in her name, or that of a trustee, it is not denied that she would have been able to hold the proceeds regardless of creditors of the husband. What is the difference in principle between taking out a new policy and having one already in existence assigned with the consent of the company? We perceive no substantial difference, and, hence, we must hold that Mrs. Cole, under the statute, had a clear right, with the consent of the company, to accept an assignment of the policy.'' We might say in this connection, that it does not appear in the statement of facts that have been called to our attention that there was any objection by the insuring company against the assignment of the policies in question at the time that they were assigned to defendant, Chicago Title & Trust Company as trustee for the benefit of the defendants, Ruth E. and Margaret Kramer.

Again, in the case of *Betten v. Williams,* 277 Ill. App. 353, this statute came before the First Division of this Appellate Court. A motion to dismiss in the nature of a general demurrer which was filed urged that the complaint did not state a case entitling the plaintiff to the relief sought. It was stipulated that the estate of Eddy was still pending in probate, that his indebtedness was approximately $300,000 including the claim for alimony and that one of the daughters had a claim for $119,000, and that the face value of the securities held by the estate was $308,000. The chancellor dismissed the complaint for want of equity; the Appellate Court affirmed the decree; and the Supreme Court denied the certiorari. On page 361 of 277 Ill. App., the court said;

"Although respective counsel have argued at some length as to the insurance policies, we are of the opinion that the greater weight of authority supports the right of a parent to obtain insurance policies in a reasonable amount on his life in favor of a child, regardless of whether or not the insured is insolvent. In chap. 73 on Insurance, par. 342, Ill. Statutes (Cahill) 1933, it is provided that it shall be lawful for any wife to take out insurance policies on the life of her husband, and, in case of her surviving, the amounts payable on the policies shall be free from the claims of the representatives of the husband or of any of his creditors," and then cited cases of courts of last resort sustaining the opinion in this case.

In the case at bar the beneficiaries did not even know of the insurance trust until after Kramer's death. The Chicago Title and Trust Company as trustee had no knowledge whatever of any facts that would have created a suspicion of fraud. The master found that neither the Chicago Title & Trust Company, Margaret Kramer or Ruth E. Kramer had any connection with, or knowledge of any of the allegedly fraudulent actions of any of the parties described in the complaint or sought to be proved in the evidence; that the only connection with the matters involved herein which has been shown as to the said defendants, is that the Chicago Title & Trust Company agreed to receive the proceeds of the life insurance policies, as trustee for Margaret and Ruth E. Kramer in a written agreement which is Chicago Title & Trust Company Trust No. 28778, between it and Albert T. Kramer, and that after Kramer's death the said company collected such insurance funds and retains them for the trust purposes.

It would appear from the authorities which we have cited, that the plaintiff had no lawful claim either at common law or under the statute. He simply and wholly misconceived the foundation of his case, and also did not look at the fundamental principles upon

which life insurance is founded and maintained. It further appears that under numerous similar statutes in other States, creditors of the insured cannot reach the proceeds of life insurance policies even though the insured may have been hopelessly insolvent. This, however, is not the fact in the present case. The evidence does not establish that the estate was an insolvent one. There appears to be a number of cases from other jurisdictions on this very question, which we have just discussed, and it is urged that even under the common law, and wholly regardless of the aforesaid exemption statute, the proceeds of life policies are not an asset of the estate of the insured, unless payable to the administrator, and the insured's creditors cannot recover the proceeds. In support of this contention, the case of *Gurnett v. Mutual Life Ins. Co. of New York*, 356 Ill. 612, is cited, it appearing that one Ames created a life insurance trust with the Central Republic Bank & Trust Company. He reserved the right to change the beneficiary; to borrow money in accordance with the policy provisions; to use the policies as security; or to surrender the policies for their cash value, and it was also provided that the trust might be terminated in whole, or might be modified and amended. The trust was twice amended. Between 1906 and 1927, Ames acquired 33 life policies in an amount of more than $1,000,000. At his death, he was indebted for $324,000. The complaint to reach the proceeds, set forth the above facts and alleged that his estate was insufficient to pay his debts. His estate was in process of administration and his debts were principally to stock brokers. The validity of the trust was attacked but the defendants filed a general demurrer to the complaint and the trial court dismissed the complaint for want of equity. The decree was affirmed, by the Appellate Court, and on further appeal the Supreme Court affirmed the Appellate Court. The Supreme Court said on this question: ''A policy

of life insurance is not deemed an asset of the estate of the insured unless it is made payable to him, his executors or administrators. The mere fact that the insured may change the beneficiary does not make the policy or its proceeds a part of his estate. Neither the policies nor their proceeds constituted a part of the estate of Knowlton L. Ames, deceased. Since his death, the trust agreement is merely evidence of the trustee's contract under which it must collect the policies and hold the proceeds for the purposes of the trust.''

In another case cited, *Farnum v. American Nat. Bank & Trust Co. of Chicago,* 305 Ill. App. 102, where Farnum & Co. claimed that Ames was indebted to them for over $400,000, the court upon the questions that were involved said:

''In the view we have taken of this appeal, it is necessary for us to refer to only one of the special grounds urged, viz: 'The proceeds are not available to creditors for the reason that the policies were at no time, by the allegations of the amended bill itself, assets of the deceased or payable to him, his executors or administrators.' In support of this special ground of demurrer, the defendants demurring cite *Gurnett v. Mutual Life Ins. Co.,* 268 Ill. App. 518; id., 356 Ill. 612. After a careful consideration of the important question involved in this special ground of demurrer we have reached the conclusion that the special ground of demurrer is a meritorious one, and that the trial court was justified in dismissing the bill for want of equity upon that ground alone.'' There are other citations of cases in other jurisdictions where the court has passed on like questions.

It is further urged by the defendants that even under the Illinois Exemption Statute of March 26, 1869, the plaintiffs in this case, cannot recover any premiums even if it were proven Commercial Oil Company moneys were used to pay them, because the plain-

tiff did not comply with the statute and both allege and prove Kramer was insolvent when the respective premiums were paid; and urge that Kramer was never insolvent and his estate was not insolvent. It is urged that the inability, under both the statute, and the common law, of a creditor to reach the proceeds of life insurance does not apply to the recovery of the premiums. We now, therefore, consider the question of whether or not, and under what conditions a creditor may reach and follow moneys used in the payment of premiums, and it is necessary to return both to the statute of March 26, 1869, and to the common law. As already indicated from the facts it does not appear that Kramer was indebted to the Commercial Oil Company for any money paid on premiums. Plaintiff's exhibits 5a and 5b showed that the corporation was not a creditor of Kramer. It appears that the corporation charged the premiums to his personal account and that a balance was due to him from the corporation. But if the facts had been different and if it had been proven that Kramer did owe some money to the corporation, still the plaintiff cannot recover any such premiums, that might appear to have been paid on Kramer's policies. This appears to be supported by the statute of March 26, 1869, which, after stating that the proceeds cannot be taken by a creditor, states: "Provided, however, that if the premium of such policy, is paid by any person with intent to defraud his creditors, an amount equal to the premiums so paid, with interest thereon, shall inure to the benefit of said creditors, subject, however, to the Statute of Limitations."

Upon the facts as we have quoted them in calling attention to the fact that Kramer was not indebted to the corporation and that his premiums were charged to his account and that a balance was due him from the corporation, we wish to call attention to a portion of the suggestions made by the plaintiff that the master,

in the consideration of the questions which were involved, had stricken from the record plaintiff's exhibits 5a and 5b, and that therefore there was no evidence which would justify the conclusion as we have stated. It appears that the defendant, Chicago Title and Trust Company, trustee, under point 10 of its brief and argument, states;

"Plaintiff's Exhibits 5A and 5B are in the record. They are the accounts between Kramer and the Commercial Oil Company. They were introduced in evidence by Mr. Collins after the ruling by the Master that the books of the Commercial Oil Company could not be introduced in evidence and after the court had sustained the Master. Upon a further offering by plaintiff, the Master allowed them in evidence and the court approved his report based thereon. Plaintiff takes the position in his brief that nevertheless the books are not properly in evidence and tries to raise error upon the former action of the court. He cannot ignore his own action. He cannot rely upon his own error." There is no question but what the master let the exhibits in evidence, and that after they were stricken his ruling was approved by the chancellor, subsequently, by order of November 14, 1939, whereby the master's report was in all things approved. It appears that after the ruling of the master and the court as to the admissibility of the books complained of by the plaintiff, Mr. Collins again offered the books which he wanted in evidence and they were received. The error, if any, was cured by the court's approval of the master's report. The court had the right to change its mind. In the case of *Clark v. Carr*, 45 Ill. App. 469, the court said;

"If the court became satisfied that an erroneous ruling had been made in the admission of the notes, the only course open for the correction of the error was to strike out or withdraw the evidence." In this case, after having stricken the books from the record, the

master subsequently admitted in evidence upon the motion of the plaintiff and the court approved the action. These books so in the record show the facts found by the master, and prove that Kramer paid the premiums. In this connection, the case of *Bartlett v. Goodrich,* 153 N. Y. 421, says:

"It is undisputed that the policies were issued to the deceased in his own name, and made payable to him, his executors, administrators and assigns, and that up to the time of the assignment hereinafter referred to, he had the apparent legal title. It is quite true that the premiums were paid from the funds of the firm, but the deceased had furnished all the capital for the business, and there was always a large balance due to him upon the books of the firm. He had the right to draw against that balance, and it is quite immaterial whether he received a portion of it from the firm in cash, or applied it to the payment of premiums upon the policies. The result was that, in equity, he paid the premiums himself. Nor is it important now that the premiums were not charged to the deceased upon the firm books, but credited in a special insurance account. The real nature and substance of the transaction did not depend upon the methods of bookkeeping adopted. It was a circumstance to be considered by the trial court, but, in view of the finding, it has ceased to be of much importance, and cannot be given any conclusive effect in the determination of this appeal." The evidence and findings show that Kramer had been in the same position.

There is a further question that we believe should be considered and that is the contention of the plaintiff that the cases that are cited by the defendants to support their contention, that the proceeds of life policies on Albert T. Kramer's life, paid to the Chicago Title and Trust Company as trustee and held in trust for his two daughters are exempted property and cannot be taken away by creditors of Kramer, are creditor cases only. Plaintiff contends that in none

of the cases cited are the rights of a corporation claimed by a receiver in its behalf, distinguished from those of the corporate stockholders and creditors; and that in these cases there was raised no question as to the right of the *cestui que trust* to follow the property purchased with its misappropriated funds, and that the cases cited do not apply to the case on appeal. Plaintiff further contends that there is a distinction between the cases cited and the present case, because in the present case the receiver represents the corporation alone, and not its creditors or stockholders, and that, if plaintiff as receiver, represents the corporation solely, and if the corporation primarily had the right to call its directors to account in a court of equity for breaches of trust, then the receiver on behalf of the corporation can do likewise; and further that the defendants are unable to recognize the distinction between the rights of the corporation itself, claimed by its receiver, and the rights of stockholders and creditors. A number of authorities are cited by plaintiff on this question. However, we are of the opinion that the receiver is seeking to recover, not as a creditor, but to establish that the insurance fund is a part of the property of the Commercial Oil Company, and points to the fact that in the plaintiff's case the amended complaint charged not upon information and belief, but directly, that Commercial Oil Company had been defrauded of the benefits of $70,000 of life insurance, for which the corporation had paid the premiums, by reason of the changes in, substitution of, and destruction of certain books and records of the corporation, and through the failure of officers and directors of the corporation to cause the corporation to be named as direct beneficiary, under the policies of insurance, as directed by the directors. Assuming that the action was as stated by plaintiff, still the facts do not establish that Kramer's insurance provided any fund of the corporation, but rather it appears from the facts that the amount of the premiums for the insurance that

became due was paid by and charged to Kramer's account. There is no evidence which would justify the conclusion that there was any agreement by Kramer in his lifetime that the beneficiary of the life insurance policies was to be the Commercial Oil Company, and as a matter of fact the beneficiaries were named by Kramer in his lifetime as has been stated in the facts that appear in the record of this case. The facts are that Kramer, at the time of his death was not insolvent, but the facts establish that he had to his credit upon the books of the Commercial Oil Company a considerable amount of money that was due his estate.

There is one further question that it might be well to consider and that is the contention by plaintiff that the defendants having closed their case without any proof as to the honesty and fairness of Albert T. Kramer's dealing as a trustee with the funds of the corporation on and after February 9, 1929, that they are not in a position to ask this court to give them a chance to do so at another trial. It does not appear from anything that we noted in the record that he concealed any facts that were dishonest, nor that there was any conflict between the rights of the beneficiaries of the trustee and the rights of the Commercial Oil Company to this insurance fund. As we have indicated, the fund upon the death of Kramer was property and was paid to the Chicago Title & Trust Company, and by it to be administered according to the terms of the trust agreement.

In conclusion, upon consideration of the questions that are called to our attention by the parties to this litigation, we are of the opinion that the court did not err in entering an order dismissing the suit of the plaintiff for want of equity, and under the circumstances, such as we have outlined in our opinion, the direction of the court will be affirmed.

*Decree affirmed.*

BURKE, J., concurs.

DENIS E. SULLIVAN, J., dissents.