**Julia D. Ramsey, Effie C. Ramsey, Elijah P. Ramsey and Edna W. Ramsey v. Wm. H. H. Nichols and 101 Others.**

1. GIFTS—*Fraudulent Intent, Insolvency of the Donor.*—In purely voluntary donations it is the fraudulent intent of the donor which vitiates the gift. If actually insolvent, he is held to knowledge of his condition, and if the necessary consequences of his acts are to hinder or defraud his creditors, the presumption of fraudulent intent is conclusive.

2. LIFE INSURANCE—*Act of 1869 to be Liberally Construed.*—Section 19 of the act of 1869 to organize and regulate the business of life insurance (R. S. Starr & C. (2 Ed.), Ch. 73, Sec. 189) and relating to life insurance by a married woman upon the life of her husband for the benefit of herself and her children, should be construed in the nature of a statute of exemp-

tions so that an insolvent debtor may rightfully carry a reasonable amount of insurance for the protection of his family, and that in the absence of a fraudulent intent in both the insured and beneficiary the creditors can have no right, in the proceeds of the insurance, but only in the premiums paid.

3. SAME—*Fraudulent Intent in Paying Premiums.*—Under the statute, fraudulent intent on the part of the insured alone in diverting his means from the payment of his debts to the payment of life insurance premiums and mortuary assessments for the benefit of his children, while not subjecting the whole proceeds of such insurance to the payment of his debts, does enable his creditors to recover the amount of premiums and mortuary assessments so fraudulently paid.

**Bill for an Accounting.**   Appeal from Circuit Court of Clinton County; the Hon. ALONZO S. WILDERMAN, Judge, presiding.   Heard in this court at the August term, 1897.   Affirmed in part and reversed in part with directions.   Opinion filed March 10, 1898.

R. C. LAMBE, HUGH V. MURRAY and M. P. MURRAY, attorneys for appellants.

Where insurance is taken upon the life of a husband in favor of his wife and children, payable to them, the contract so made and the benefits to be derived from it are the property of the wife and children from the moment that the contract is made.   Sauervier v. Union Cen. Life Ins. Co., 39 Ill. App. 629; Central Bank v. Hume, 128 U. S. 195; Hubbard v. Stapp, 32 Ill. App. 544; Pence, Adm'r, v. Makepeace, 65 Ind. 345; Johnson v. Alexander, 125 Ind. 576; Succession of Hearing, 26 La. Ann. 326; Chapin v. Fellows, 36 Conn. 132; Life Ins. Co. v. Palmer, 42 Conn. 60; Glantz v. Gloeckler, 104 Ill. 576; McCutcheon's Appeal, 99 Pa. St. 135; Elliot's Appeal, 50 Pa. St. 75; Appeal of Brown, 125 Pa. St. 303; Appeal in Anderson's estate, 85 Pa. St. 202.

Ramsay had the right to prefer his wife in her quality of creditor to all other creditors, and on her account to make the insurance payable to herself and children. Tomlinson v. Matthews, 98 Ill. 180; Patten v. Pat-

ten, 75 Ill. 451; Whitford v. Daggett, 84 Ill. 144; Van Dorn v. Leeper, 95 Ill. 35; Tyberandt v. Raucke, 96 Ill. 71; Washington Central Bank v. Hume, 128 U. S. 195.

A person wholly insolvent may insure his life for the benefit of his wife and children to the exclusion of his creditors. Cole v. Marple, 98 Ill. 58; Succession of Hearing, 26 La. Ann. 326; Central Bank v. Hume, 128 U. S. 195; 2 Bigelow on Fraud, 129; The People v. Phelps, 78 Ill. 149; Pinneo v. Goodspeed, 120 Ill. 536.

In the absence of actual fraud, the court can not infer that the payment of premiums by a husband for his wife and family is fraudulent, unless the payment of the premiums produces the insolvency, or so materially affects the business of the husband as to be a chief cause in producing his insolvency. Johnson v. Alexander, 125 Ind. 576; Central Bank v. Hume, 128 U. S. 195.

The last cause is not reported, but copy of opinion is herewith submitted.

Where there is no actual fraud intended in the payment of premiums, the court will not weigh the amount of insurance taken upon apothecary's scales for the purpose of inferring a fraudulent intent. Central Bank v. Hume, 128 U. S. 195.

Where insurance is taken out for the purpose of defrauding, and the premiums are paid by the insolvent husband with intent to defraud creditors, in Illinois, the creditors may recover the amount of the premiums so paid with legal interest and no more. Hubbard v. Stapp, 32 Ill. App. 544.

IRWIN, VAN HOOREBEKE, FORD, McGAFFIGAN, KINGSBURY, BROWN and JAS. McHALE, attorneys for appellees.

If a conveyance or voluntary settlement is made with a view to future fraudulent indebtedness, it is void,

even as to subsequent creditors.   Crawford v. Logan, 97 Ill. 396; Patterson v. McKinney, 97 Ill. 41.

Where the assured takes out insurance on his own life, pays the premiums, and retains possession and control of the policies until his death, the beneficiaries have no vested interest during the life of the assured, who, with the concurrence of the insurer, may substitute other beneficiaries for those first named.   Otis v. Beckwith, 49 Ill. 121; Johnson v. Van Epps, 110 Ill. 558; 14 Ill. App. 201.

In this country the authorities uniformly hold life insurance policies to be choses in action and within reach of defrauded creditors under the statute of Elizabeth.   Late English cases to the contrary are based upon 1 and 2 Vict. Ch. 110.   Bunyon on Life Ins., Sec. 273; Bump on Fr. Con. 239, and citations; 1 Story's Equity Jur., Secs. 367–8; Schondler v. Wace, 1 Camp. 487; Skarf v. Soulby, 1 Mac. & G. 364; French v. French, 6 De G. Mact. and G. 95; Jenkyn v. Vaughan, 3 Drew Ch. 419; Neal v. Day, 28 S. J. Ch. 45; Stokoe v. Cowan, 29 Beav. 637; Freeman v. Pope, S. R. 9 Eq. 206; Penhall v. Elvin, Sm. and G. 258; Rittler v. Smith (Md.), 2 L. R. A. 844.

The text of Bliss and of May on Ins., Secs. 317–319, is not the law of Illinois.   The cases upon which they are based were decided under statutes unlike ours. Johnson v. Van Epps, 14 Ill. App. 201; Conyne, Stone & Co. v. Jones, 51 Ill. App. 18.

The naming of the beneficiary in a policy or certificate is an act in the nature of a will, is a declaration of a purpose to bestow a bounty which, until death, vests no rights in the legatee or beneficiary.   The proceeds of policies fraudulently transferred may be reached by creditors' bill.   Conyne, Stone & Co. v. Jones, 51 Ill. App. 18.

The proceeds of Ramsey's life insurance policies and

benefit certificates were neither executed gifts *inter vivos*, nor valid gifts *causa mortis*. Trustees v. Hall, 48 Ill. App. 544; 18 Am. and Eng. Ency. of Law, 1312 and citations; Witt v. Amis, 7 Jur. (N. S.) 499; Jackson v. R'y Co., 88 N. Y. 520; Telford v. Patton, 144 Ill. 620; 3 Waite's Actions and Def. 302, 311.

Opinion Per Curiam:—This was a proceeding in chancery by appellees, creditors of the estate of Rufus A. Ramsey, deceased, against appellants. It is charged in the bill and intervening petitions that said Ramsey died intestate, leaving him surviving his widow Julia D. Ramsey and his children Effie C. Ramsey, Elijah P. Ramsey and Edna W. Ramsey. That for five years next before his death he was insolvent. That during the last five years before he died, said Rufus N. Ramsey made gifts to his wife and children amounting to not less than $2,500, by taking out policies of insurance upon his life in favor of his wife and children, and paying the premium thereon out of his own money after he became insolvent. That at the time of his death there was insurance upon his life in the Equitable Life Assurance Society, $10,000; in the Supreme Lodge of the Knights of Honor, $2,000; in the A. O. U. W., $2,000; in the S. K. of A. O. U. W., $1,000; in the Banker's Life, $7,500; that said policies were taken out for the benefit of his wife and children, and the premiums upon them for five years and upwards before he died were paid whilst he was insolvent. That he made such payments with intent to defraud his creditors. That an amount equal to the sum paid as premiums, with interest thereon, inures to the benefit of complainants as creditors out of the proceeds of said policies, which, after his death, were paid to his widow and children. That the administrator has not inventoried the money paid upon said life insurance.

The prayer of the bill and petition is, that an account be taken of the amount of premiums paid on said insurance for five years and that defendants to said bill, appellants here, be required to pay the amount ascertained by such accounting into court for the benefit of creditors entitled thereto and for further relief, etc. The bill and petitions were answered and the cause progressed to decree in substance as follows:

Finds that Rufus N. Ramsey died November 11, 1894. That he was insolvent five years before. That there was paid in premiums and mortuary assessments upon his life in the five years next before the filing of the original bill sums as follows:

| | |
|---|---:|
| Washington Life Insurance Company | $ 493.92 |
| Knights of Honor | 135.45 |
| A. O. U. W | 97.25 |
| Covenant Mutual Benefit Association | 337.57 |
| Equitable Life Assurance Society | 1,488.00 |
| Equitable Life Assurance Society | 77.30 |
| Equals | $2,626.49 |
| That the interest thereon, at five per cent, amounts to | 374.21 |
| Making a total of | $3,000.70 |

That said payments were made out of his own money and that in making said payments he acted for and on behalf of his wife and children.

That the creditors of deceased are entitled to receive said amount of $3,000.70, and decrees that the said Julia D. Ramsey shall pay $83.15 and an equal one-fourth of the balance, making the sum of $812.53¾, and that Effie C. Ramsey, Elijah P. Ramsey and Edna W. Ramsey shall each pay $729.33¾. Denies all relief as against the insurance companies and fraternal societies. Dismisses the complaint and petition as to all matters other than insurance. And the court doth further order, adjudge and decree that the defendants, Julia D. Ramsey, Effie C. Ramsey, Elijah P. Ramsey

and Edna W. Ramsey, do, within forty days from the sixteenth day of November, 1896, pay to the clerk of this court the said sum of $3,000.70. That the defendant, Julia D. Ramsey, do pay of the said sum $812.53¾; that the defendants, Effie C. Ramsey, Elijah P. Ramsey do pay $729.83¾ each, and that the defendant, Edna W. Ramsey, pay $729.83¾, and award several executions as at common law and reserves all question of distribution of the money among the creditors.

We are of opinion it clearly appears from the evidence that deceased Ramsey paid the premiums and mortuary assessments on the insurance in question, and that the evidence fully warrants us in finding that he was insolvent during a period of five years last prior to his death; that during all that time certain of the appellees were creditors of deceased and that during a portion of that time all of the appellees were such creditors, and that the aggregate of debts due from deceased to appellees exceeds the amount of all the premiums and assessments paid by him during said period.

It is contended by appellees that these payments were gifts of so much money by deceased to appellants, and that a voluntary gift, when the donor is insolvent, is presumptive evidence of fraud and voidable at the instance of pre-existing creditors.

As to appellant Julia D. Ramsey, this contention is not warranted by the facts. The evidence shows that during all the time these payments were being made, deceased was heavily in debt to her for moneys arising from sales of real estate inherited by her, and such indebtedness was evidenced by promissory notes aggregating more than $50,000, executed years before by him to her. It must be presumed that all payments to her benefit were on account of such indebtedness, and can not be held to be gifts. Appellees can not, upon

any theory, rightfully have any claim on the money arising from the insurance payable to Julia D. Ramsey, or upon her or the insurers for any part of the premiums or assessments paid by the deceased on account of such insurance.

It is suggested that deceased was also indebted to Edna W. Ramsey, but such indebtedness was only in the small sum of $95 made up of little gifts which she had from time to time received from friends and deposited in her father's bank. It is not presumable that in paying premiums and assessments on the policies and certificates payable to her, either he or she had in mind the payment or securing of this small deposit.

As to appellants, Effie C. Ramsey, Elijah P. Ramsey and Edna W. Ramsey, we are of opinion appellees' contention is well established in both fact and law.

It is strongly urged by appellants that the evidence fails to establish any fraud on the part of deceased. The premiums and mortuary assessments paid by him were voluntary gifts of so much money by deceased to the use and benefit of these appellants at a time when he was insolvent. Such gifts under such circumstances is presumptive evidence of fraud. We quote from a case many times referred to in the briefs and arguments of counsel on both sides. "In all purely voluntary conveyance (and gifts) it is the fraudulent intent of the donor which vitiates. If actually insolvent, he is held to knowledge of his condition, and if the necessary consequences of his act is to hinder, delay or defraud his creditors, * * * the presumption of fraudulent intent is irrebuttable and conclusive, and inquiry into his motives is inadmissible. Washington Central Bank v. Hume, 128 U. S. 211.

That the policies and certificates were contracts of insurance between the insurers and the beneficiaries,

Ramsey v. Nichols et al.

and that deceased had no property interest in them. However that may be, the money that paid the premiums and assessments was his money, and when payments were made by him on account of this insurance, such payments were voluntary gifts.

That appellants are not pre-existing creditors. The evidence shows that some of them were time depositors in deceased's bank whose accounts were of more than five years' standing. These deposits were evidenced by certificates of deposit. It is true that at stated times the outstanding certificates would be taken up and canceled and new ones issued, but the new certificates, under the facts of this case and as between the parties before us, did not pay off and extinguish the old debts. They were only new evidences of the old debt.

That appellees who testified on the trial of the case were incompetent witnesses, especially so as to the minor Edna W. Ramsey. This was a proceeding by appellees directly against the appellants. None of the parties sue or defend in a fiduciary capacity nor as heir, legatee or devisee of deceased, nor do we see that the fact that one of the parties was a minor affects the right of any to testify. We see no reason why all parties were not legally competent witnesses.

That the evidence fails to show that deceased paid all the premiums and assessments, and therefore the decree, in any event, is for too much. We think the evidence fully warrants the conclusion that premiums and assessments were paid to the amount found, and it is clearly inferable from what is properly proven that deceased made all the payments that were made.

That certain of the payments were mortuary assessments paid to benevolent associations, and that such benefits as accrued to appellants upon death of deceased, because of his membership in these associations, is not such insurance as appellees could have any

claim on in any case, that it is charity and not insurance. The money that paid such assessments was deceased's money, was paid to maintain his certificates of membership in the association, by the terms of which upon his death appellees were to receive the sums of money specified in such certificates. The important feature of such associations is life insurance, and the whole of the mortuary assessments paid by him was to cover the cost of such insurance. The money so paid by deceased was voluntary gifts to the direct interest of appellants, and was ratified and adopted by them in the acceptance of the proceeds of such investments. As between such beneficiaries and such pre-existing creditors, we are of opinion this must be deemed and treated by the court as life insurance.

That the court erred in ordering that the money be paid to the clerk of the court. The effect of that order is that the money be paid into court to be held until the pending questions concerning distribution of the fund among appellees may be determined. It makes the clerk, by order of court, custodian of the fund while it remains under control of the court. The clerk does not receive the money by virtue of his office as clerk, but by virtue of his designation and appointment by the court for that purpose. A chancellor has ample power to make such order.

Appellees assign cross-errors and charge that the court erred in not rendering a decree against appellants for the payment of all the moneys received by them from the insurance companies and associations.

The nineteenth section of the act of 1869, entitled "An act to organize and regulate the business of life insurance" (Starr & Curtis' Compilation (2 Ed.), Ch. 73, Sec. 189) which section was first enacted as a separate act in 1865 (Session Laws 1865, page 88), provides: "It shall be lawful for any married woman,

by herself and in her own name, or in the name of any third person, with his assent as her trustee, to cause to be insured, for her sole use, the life of her husband for any definite period or for the term of his natural life; and in case of her surviving such period or term, the sum or net amount of the insurance becoming due and payable by the terms of the insurance shall be payable to her, to and for her own use, free from the claims of the representatives of the husband, or of any of his creditors.    Provided, however, that if the premium of such policy is paid by any person with intent to defraud his creditors, an amount equal to the premium so paid, with interest thereon, shall inure to the benefit of said creditors, subject, however, to the statute of limitations.    The amount of the insurance may be made payable, in case of the death of the wife, before the period at which it becomes due, to his, her or their children, for their use, as shall be provided in the policy; and their guardian, if under age.''

It is contended by appellees that this case does not fall within the statute.

In Cole v. Marple, 98 Ill. 58, it appeared that Jerah D. Cole, on July 17, 1868, insured his own life for the sum of $10,000, payable in twenty years or sooner in case of death.    The annual premiums were $501.10, and the assured paid them as they became due in each year.    On August 30, 1876, he assigned the policy with the assent of the company to his wife, and the next day died insolvent, and it seems he had been insolvent for some considerable period of time previous to his death.    Marple was a creditor of the deceased, who proved his claim against the estate and then filed his bill, as has been done in this case, in the nature of a creditor's bill, for the purpose of subjecting the sum or amount of the insurance which became payable by the terms of the insurance and which had been collected

by the widow, to the payment of his debt on the
ground that the assignment by the deceased was in
fraud of his rights.   The court held, however, that the
section of the statute above quoted was and is in the
nature of an exemption statute and should be construed
with the same liberality, and quoted with approval the
following language of the Supreme Court of Missouri,
in passing upon the provisions of a statute of that
State the same in substance as ours:   (R. S. Mo.
1889, Secs. 5851, 5852, 5853, 5854.)   "It also makes it
lawful for a married woman, herself, and for her own
benefit to effect an insurance on the life of her husband,
which shall belong to her and her children.   The
statute was founded in charity and intended to sub-
serve a beneficent object, and in a case falling within
it I should be disposed to give it the most favorable
construction to carry out its humane purpose."   (Judge
Wagner in Charter Oak Life Ins. Co. v. Brant, 47 Mo.
419, 4 Am. R. 328.)

The court in the Cole case held that while the trans-
action of the assignment of the policy by the husband
to the wife was not within the letter of the statute, still,
it was within the protection of a liberal construction of
that statute and upheld the transaction as to all except
the premiums paid by the husband within five years
before the suit was brought.

Appellees also contend that this case does not fall
within the interpretation given to the statute in Cole v.
Marple, and suggest that neither the statute nor Cole
v. Marple include the children of an insured, that the
wife in this case did not cause deceased to be insured
as provided in the statute, and that deceased did not
assign his insurance to his wife as was done in the Cole
case.

If under the statute a wife may cause her husband's
life to be insured for her benefit and for the benefit of

their children, and her husband may pay the premiums with intent to defraud his creditors, and the whole of the sum realized from such insurance be free from all claims of such creditors, except the amount of the premiums so fraudulently paid; and if that statute can be so construed as to bring within its protection a case where the husband insured his own life for the benefit of his estate and afterward assigned the policy to his wife and paid the premiums in fraud of his creditors, it does not seem to us to be warping such course of construction out of line to carry it to a point where it will include within its beneficent purpose a case where the husband insured his own life for the benefit of his children direct.

We the more readily give to the statute this degree of liberal construction from the fact that in the absence of a legislation on the subject, the trend of authority is toward the conclusion that an insolvent debtor may rightfully carry a reasonable amount of insurance for the protection of his family from suffering and want, and that in absence of fraudulent intent in both insured and beneficiary, the creditors can have no right either in the proceeds of insurance or to recover the amount of the premiums paid. In a great majority of cases likely to arise, this statute, as we interpret it, is more favorable to the creditor than the law might properly be held in the absence of such statute. In the case before us, the beneficiaries can not, under the evidence, be held to have had any guilty knowledge or fraudulent intent; but under the statute, as we interpret it, fraudulent intent on the part of the insured alone in diverting his means from the payment of his debts to the payment of insurance premiums and mortuary assessments for the benefit of his chidren, while not subjecting the whole proceeds of such insurance to the payment of his debts, does enable his creditors to recover

the amount of premiums and assessments so fraudulently paid, notwithstanding the amount of insurance may have been only a moderate provision for his family against suffering and want, and that the beneficiaries may have had no guilty knowledge.

Many interesting questions are raised and argued in the various briefs that we do not deem it necessary for us to discuss. The decree of the Circuit Court is reversed in so far as it effects appellant, Julia D. Ramsey, and in all other respects affirmed.

It is ordered that appellants, Effie C. Ramsey, Elijah P. Ramsey and Edna W. Ramsey pay three fourths of the costs, and appellees pay one fourth thereof.

Affirmed in part and reversed in part with directions to the Circuit Court to enter a decree in accordance with this opinion. Affirmed in part and reversed in part with directions.