*Decision will be entered under Rule 50.*

ELSIE JANUSCHKE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2056–65. Filed June 29, 1967.

*Robert S. Raum*, for the petitioner.
*William F. Chapman*, for the respondent.

ARUNDELL, *Judge:* Respondent determined that petitioner is liable as a transferee of assets of Norma Nathan, petitioner's daughter, for an unpaid deficiency in income tax of $2,816.88 due for the calendar year 1952, plus an addition to tax pursuant to section 293(b) of the Internal Revenue Code of 1939 of $1,408.44, plus interest as provided by law.

Petitioner has assigned two errors, as follows:

(a) The Commissioner erroneously assessed a tax against the alleged transferor, Norma Nathan.

(b) The Commissioner erred in his contention that the petitioner is a transferee of said Norma Nathan.

## FINDINGS OF FACT

The stipulated facts are found as stipulated.

Petitioner is an individual with residence at Jackson Heights, N.Y., on the date when the petition in this proceeding was filed. Petitioner is being held liable as a transferee of her daughter Norma Nathan, who resides at the same address, and who allegedly owes income tax and a 50-percent addition to tax for the year ended December 31, 1952, in the respective amounts of $2,816.88 and $1,408.44, plus interest as provided by law.

The notice of liability was mailed to petitioner on January 15, 1965.

Norma Nathan is the widow of Albert L. Nathan who died intestate on January 12, 1958.

On or about March 14, 1953, a U.S. Individual Income Tax Return, Form 1040, for the calendar year 1952, was filed with the district director of internal revenue, Camden, N.J., in the joint names of "Albert L. & Norma Nathan." In the space provided for "Signature of taxpayer" appeared Albert L. Nathan. In the space provided for "Signature of taxpayer's wife or husband if this is a joint return" appeared Norma Nathan. Norma Nathan did not sign the return. The purported signature of Norma Nathan was not her signature. She had authorized no one to sign a return for her. She had no income for 1952. The return was filed without the knowledge, consent, or authorization of Norma Nathan. The only income reported in the return was $13,130 of wages received by Albert from Delta Heating Corp. of Trenton, N.J. After subtracting itemized deductions of $3,960.51 (mostly for medical expenses), there remained as net income reported the amount of $9,169.49.

In a statement attached to the said notice of transferee liability, the following appeared:

The deficiency in income tax and penalty due from Norma Nathan has been determined as follows:

### TAXABLE YEAR ENDED DECEMBER 31, 1952

#### ADJUSTMENTS TO INCOME

| | | |
|---|---:|---:|
| Net income as disclosed by return | | $9,169.49 |
| Unallowable deductions and additional income: | | |
| (a) Dividends | $10,189.21 | |
| (b) Medical expenses | 539.46 | |
| (c) Additional compensation | 600.00 | |
| | | 11,328.67 |
| Net income as corrected | | 20,498.16 |

EXPLANATION OF ADJUSTMENTS

(a) To treat as dividends the proceeds of cash sales made by Delta Heating Corporation to Bordentown Sheet Metal Company which were received and retained by Albert L. Nathan, the sole owner of Delta Heating Corporation.

(b) Due to the adjustments above increasing adjusted gross income medical expenses allowable are recomputed as follows:

| | |
|---|---:|
| Medical expenses per return | $4,005.71 |
| Less: 5% of corrected adjusted gross income of $23,919.21 | 1,195.96 |
| Medical expenses allowable | 2,809.75 |
| Medical expenses deducted per return | 3,349.21 |
| Medical expenses disallowed | 539.46 |

(c) The amount of $600.00 paid during 1952 by Delta Heating Corporation toward the rent of the personal residence of Albert L. and Norma Nathan represents additional compensation to Albert L. Nathan, the sole owner of Delta Heating Corporation.

Under date of November 12, 1958, Norma Nathan, individually, and as administratrix of the estate of Albert L. Nathan, executed Form 870–AD wherein she consented to the assessment and collection of a deficiency for the year ended December 31, 1952, in the amount of $3,620 and a 50-percent addition to tax under section 293(b) of the Internal Revenue Code of 1939 in the amount of $1,810. On January 9, 1959, these amounts, together with interest, were assessed against Albert L. Nathan, deceased, and Norma Nathan. Prior to January 15, 1965, there had been paid $803.12 on the deficiency and $401.56 on the penalty, thus leaving as the asserted transferee liability the respective amounts of $2,816.88 and $1,408.44, plus interest as provided by law.

The effect of signing said Form 870–AD was never explained to Norma Nathan and was not intended by her as a consent to the Government's assessing the proposed deficiency against her individually.

At the time of his death, Albert left no estate except about $16,000 of life insurance which had a cash surrender value of not more than about $400.

On February 18, 1958, Norma Nathan opened a savings account in the West Side Federal Savings & Loan Association with a deposit of $8,209.27, in the name of Norma Nathan, I.T.F. (in trust for) Edward Nathan, and bearing account No. 875877. Edward Nathan is the minor son of Norma Nathan and the deceased, Albert L. Nathan.

On February 18, 1958, Norma Nathan opened a savings account in the West Side Federal Savings & Loan Association with a deposit of $8,209.27, in the name of Norma Nathan, I.T.F. Suzanne Nathan, and bearing account No. 875876. Suzanne Nathan is the minor daughter of Norma Nathan and the deceased, Albert L. Nathan.

Norma was petitioner's only child. Prior to Albert's death on January 12, 1958, petitioner had loaned to Norma and Albert a total amount of at least $10,000.

On April 11, 1958, the sum of $2,500 was withdrawn from each of the accounts (Nos. 875876 and 875877) by Norma Nathan and transferred to an account in the name of Elsie Januschke, account No. 714, in the West Side Federal Savings & Loan Association.

On January 15, 1959, the sum of $2,500 was withdrawn from each of the accounts (Nos. 875876 and 875877) by Norma Nathan and transferred to an account in the name of Elsie Januschke, account No. 714, in the West Side Federal Savings & Loan Association.

The aforementioned transfers on April 11, 1958, and January 15, 1959, made by Norma Nathan to the petitioner in the total amount of $10,000 were intended as repayments of the loans originally made by petitioner to or for the benefit of Norma Nathan.

On June 16, 1959, Norma Nathan filed with the district director of internal revenue, Camden, N.J., a "Statement of Financial Condition And Other Information" (Form 433) in which the name of the taxpayer was given as "Albert Nathan (deceased) & Norma Nathan." The statement was signed by "Norma Nathan, Indiv. and as adm. of the estate of Albert L. Nathan."

### ULTIMATE FINDINGS OF FACT

Norma Nathan did not file a joint return with her husband, Albert L. Nathan, for the calendar year 1952.

Norma Nathan had no income and no tax liability for the calendar year 1952.

Petitioner is not liable as a transferee of assets of her daughter, Norma Nathan.

### OPINION

The question is whether petitioner is liable as a transferee of property of a "taxpayer" under section 6901[1] of the Internal Revenue Code of 1954, made applicable by section 7851(a)(6)(A) of the Code. Section 6902(a) of the Code provides:

(a) BURDEN OF PROOF.—In proceedings before the Tax Court the burden of proof shall be upon the Secretary or his delegate to show that a petitioner is

---

[1] SEC. 6901. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

    (1) INCOME, ESTATE, AND GIFT TAXES.—

        (A) Transferees.—The liability, at law or in equity, of a transferee of property—

            (1) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),

    *      *      *      *      *      *      *

(b) LIABILITY.—Any liability referred to in subsection (a) may be either as to the amount of tax shown on a return or as to any deficiency or underpayment of any tax.

liable as a transferee of property of a taxpayer, but not to show that the tax-payer was liable for the tax.

The alleged transferee here is petitioner, Elsie Januschke, and the alleged taxpayer is Norma Nathan, the daughter of petitioner. If Norma was not a taxpayer and was not liable for any tax, it would follow that respondent's determination is without merit. Whether Norma was a taxpayer for 1952 and liable for the unpaid taxes here in question depends upon whether the return filed for that year was a joint return with her husband, within the provisions of section 51 of the Internal Revenue Code of 1939.[2] As early as January 12, 1935, the joint return of a husband and wife (if not made by an agent other than husband or wife) "must be signed by both spouses, except that one spouse may sign the return as the agent for the other, if the return is accompanied by a power of attorney on Form 936, author-izing such action." T.D. 4512, XIV–1 C.B. 79, 80. In our findings of fact, after carefully considering all the evidence, we have found that the 1952 return was not a joint return, that Norma never signed the return, that the making and filing of the return was never dis-cussed with her, that she authorized no one to sign the return for her, that she had no income for the year 1952, and that, therefore, she was not required to file a return for 1952. Accordingly, it is clear that Norma was not liable for any tax shown to be due on the 1952 return or later assessed as a deficiency. See *Alma Helfrich,* 25 T.C. 404, which case is based upon an almost identical set of facts with those existing here, and in which we said:

We must next consider whether petitioner and her former husband filed a joint return for the year 1947. * * *

There is no doubt that the return on its face purports to be the joint return of Carl and Alma Helfrich. It was filed in their joint names. * * *

We have found, however, and we hereby hold, that petitioner had no inten-tion of filing a joint return and did not in fact file a joint return with Carl W. Helfrich for the year 1947. The signature "Alma L. Helfrich" on the return is not hers. Furthermore, she did not authorize anyone to sign her name to the return; she did not know the return had been filed; she did not participate in its preparation; and the first time she saw it was in the collector's office in East St. Louis in 1952. * * *

\*       \*       \*       \*       \*       \*       \*

Therefore, as petitioner herein did not intend to and did not in fact file a joint return she incurs no joint and several liability based on a joint return. * * *

The respondent contends that because Norma executed Forms 870–AD and 433 both as an individual and as administratrix of the estate

---

[2] SEC. 51. INDIVIDUAL RETURNS.

(b) HUSBAND AND WIFE.—

(1) IN GENERAL.—A husband and wife may make a single return jointly. Such a re-turn may be made even though one of the spouses has neither gross income nor deduc-tions. If a joint return is made the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.

of her deceased husband, she thereby gave her *tacit* consent to the filing of the 1952 return as a joint return, relying principally upon *Joseph Carroro*, 29 B.T.A. 646. In that case we said:

And where the husband, under the circumstances here present, filed a joint return for himself and wife, without objection of the wife, who failed to file a separate return, it will be presumed the joint return was filed with the tacit consent of the wife, and she will not be heard to the contrary after joint petition has been filed with the Board of Tax Appeals. * * *

The *Carroro* case involved the taxable years 1920 through 1925 and it was not until 1935 that the regulations required that a joint return be signed by both spouses. T.D. 4512, *supra*. The wife in *Carroro* had taxable income of her own which was required to be reported in either a joint return or a separate return of her own. Here, Norma had no income for 1952 and was not required to file any return.

We do not think the filing of Forms 870–AD and 433 resulted in the giving of a tacit consent to the filing of the 1952 return as a joint return. "The tacit consent presumption is nothing more or less than the presumption of correctness attaching to respondent's determination that a joint return was in fact intended." *Vincent S. Hennen*, 35 T.C. 747, 749. Any such presumption of correctness has clearly been rebutted in the instant case. *Alma Helfrich, supra*. In that case we also said (p. 407):

Moreover, we are unable to find that the execution with Carl of a power of attorney and consent relating to 1947 taxes is an admission that the return was intended to be a joint return. Such execution would appear to be a proper course of action for any taxpayer whose tax liability for a certain year is questioned by the Commissioner whether or not any return had been filed.

In any event, the signing of Form 870–AD would not relieve the Commissioner of his burden of proof as to fraud. Sec. 7454, I.R.C. 1954. Cf. *United States* v. *Prince*, 348 F. 2d 746 (C.A. 2, 1965).

We hold, since there was no liability on the transferor for any tax or addition to tax or interest for the year 1952 there can be no liability on petitioner as a transferee.

A further reason for holding there is no liability on petitioner as a transferee is that petitioner as a creditor merely received repayment of the loans she had in earlier years made to her daughter, the alleged transferor. See *Newman & Carey Subway Construction Co.*, 37 B.T.A. 1163 (issue 3). In that case a minority stockholder made advances to the corporation and was later repaid. In holding that the estate of the stockholder was not liable as a transferee, we said:

3. The estate resists the determination of transferee liability against it for the deficiency of the corporation. The burden of proof to establish such liability is upon the Commissioner. He argues that what the estate received from the corporation was a distribution to a shareholder which left the corporation in-

502

solvent or with assets insufficient to pay its taxes, thus establishing the estate's liability as a transferee. It is, however, not as a shareholder that the estate received the payment, but as a bona fide creditor upon long standing advances of money, *Frances W. Haines*, 20 B.T.A. 721. There was no liquidation distribution among shareholders. Cf. *Hutton* v. *Commissioner*, 59 Fed. (2d) 66. As a creditor, the estate was fully entitled to be paid without subjecting it to liability for a debt due to another. *Reid Ice Cream Corporation* v. *Commissioner*, 59 Fed. (2d) 189. * * *

We, therefore, hold that petitioner is not liable as a transferee of assets of Norma Nathan.

*Decision will be entered for the petitioner.*