RUTH MENDELSON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

GERTRUDE ROSENTHAL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5291–66, 5292–66. Filed July 31, 1969.

*Bernard M. Kaplan* and *Harold S. Lansing*, for the petitioners.
*James F. Kennedy*, for the respondent.

[1] The respondent objected to the introduction of testimony by the petitioner as to certain statements made by Mr. Rosenthal on the ground that they were inadmissible hearsay. In most instances, such statements were introduced to show what the *petitioner*—not Mr. Rosenthal—believed and, therefore, are not hearsay at all, inasmuch as their relevancy does not depend on Mr. Rosenthal's veracity. See McCormick, Evidence 460 (1954) ; 29 Am. Jur. 2d, Evidence, sec. 497 ; 31A C.J.S., Evidence, sec. 236. When the testimony was proffered to prove that Mr. Rosenthal believed he owed the petitioner money, it is nevertheless admissible as a declaration against pecuniary interest. *German Ins. Co.* v. *Bartlett,* 188 Ill. 165, 58 N.E. 1075 (1900) ; 29 Am. Jur. 2d, Evidence, secs. 617–620; 31A C.J.S., Evidence, secs. 217–224; cf. *Martin* v. *Savage Truck Line,* 121 F. Supp. 417 (D.D.C. 1954).

732

## OPINION

The respondent, having determined and assessed deficiencies against Louis D. Rosenthal, now seeks, pursuant to the procedures provided in section 311(a) of the Internal Revenue Code of 1939,[2] to collect such deficiencies from the petitioner to the extent of certain transfers made to her by Mr. Rosenthal.

In her petition and again in her brief, the petitioner asserts that the respondent's claim of transferee liability is barred by the statute of limitations because the respondent failed to mail her a timely statutory notice of liability. However, the petitioner has apparently abandoned this position since she has presented no arguments in support of it. Furthermore, it appears that there is no basis for such a position. In paragraph 7 of his answer, the respondent alleges that on November 9, 1965, i.e., less than 1 year after the assessment of the deficiencies against Mr. Rosenthal, the petitioner agreed in writing to an extension of the time for mailing a notice of liability to a date later than the date on which the notice in this case was actually mailed. If this allegation is true, then the notice was timely and the respondent's claim is not barred by the statute of limitations. Sec. 311(b)(4). The petitioner filed a reply to the respondent's answer, but that reply contained no mention whatsoever of paragraph 7 of the respondent's answer or the allegation contained therein. Rule 18(b) of the Tax Court Rules of Practice provides:

(b) *Effect of reply.*—Every material allegation of fact set out in the answer and not expressly admitted or denied in the reply, where a reply is filed, shall be deemed to be admitted. * * *

Pursuant to such rule, the respondent's allegation of a written extension of the statute of limitations is deemed to be true, and the petitioner's contention that the respondent's claim is barred by the statute of limitations is rejected.

Section 311(a) provides a procedure whereby "The liability, at law or in equity, of a transferee of property of a taxpayer" in respect of unpaid taxes and additions thereto may be enforced; it does not purport to define or establish the elements of such liability as a matter of Federal law. "Accordingly * * * the existence and extent of liability should be determined by state law."[3] *Commissioner* v. *Stern,* 357 U.S. 39, 45 (1958).

---

[2] All statutory references are to the Internal Revenue Code of 1939, unless otherwise indicated.

[3] Inexplicably, the parties have failed to inform this Court of the applicable principles of Illinois law with respect to the right of a creditor of a transferor to proceed against and recover from a transferee of property. In the interests of judicial economy and the orderly disposition of matters before us, we have researched the Illinois law to the extent practicable, and, where questions remain, we have assumed such law to be in accordance with prior decisions of this Court.

Under the Illinois fraudulent conveyance statutes,[4] a transfer made to "disturb, delay, hinder or defraud creditors" is void as to such creditors. When the transfer is made without consideration or for a grossly inadequate consideration, and when the transfer is made while the debtor is insolvent or when it renders the debtor insolvent, actual fraud need not be proved; fraud in law is presumed, without regard to the debtor's intent. On the other hand, when consideration is given for the transfer, it will not be set aside unless there is actual fraud. *Thompson* v. *Williams*, 6 Ill. 2d 208, 127 N.E. 2d 457 (1955); *Wilkey* v. *Wax*, 82 Ill. App. 2d 67, 225 N.E. 2d 813 (1967). Under Illinois law, a transfer may not be avoided merely because it prefers one creditor over another: ":A debtor may prefer one creditor to another, but such preference must be made in good faith with the intent to pay or secure the payment of a just indebtedness against him." *Thompson* v. *Williams*, *supra* at 212, 127 N.E. 2d at 460. Even when the preferred creditor is the spouse of the debtor, the transfer may be unassailable by other creditors; however,

> Where the conveyance constituting the preference is made by the debtor to his wife, this court has held (1) the proof should be clear and satisfactory that the wife has a valid, subsisting debt and (2) where the debtor is thereby rendered insolvent, the burden of dispelling the implication of fraud as against the pre-existing creditors is upon the debtor and his grantee. * * * [*Ibid.*]

With these principles of Illinois law before us, we now turn to the transfers on which the respondent relies to assert transferee liability against the petitioner.[5] There is no indication in the record that the transfers in question were the product of, or resulted in, actual fraud, so our question is whether any of these transfers were tainted with fraud in law.

(1) We have found that the petitioner returned the $10,000 in the Marshall account to her husband at his request and that none of it was returned to her. This finding was based upon the testimony of the

---

4 Sec. 4. Fraudulent conveyances, etc.

Every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to disturb, delay, hinder or defraud creditors or other persons, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with like intent, shall be void as against such creditors, purchasers and other persons. * * *

Sec. 5. Innocent purchaser.

The foregoing section 1 shall not affect the title of a purchaser for a valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor. * * * [Footnote omitted. Ill. Ann. Stat. ch. 59, secs. 4, 5 (Smith-Hurd 1951).]

5 The respondent has conceded that the petitioner is not liable as a transferee with respect to household furnishings allegedly transferred to her and with respect to the balance in the Mercantile joint checking account as of the date of Mr. Rosenthal's death which allegedly passed to the petitioner at his death. We accept these concessions, and they will be reflected in the Rule 50 computation.

petitioner. The respondent has offered no evidence tending to contradict her statements, but he argues that her testimony in this respect should not be believed. He points out that the petitioner was unwilling, after March of 1958, to entrust her savings to her husband, and he questions whether she would be willing to do so in 1963, especially after she has succeeded in securing a repayment of them.

The respondent has not contended that there was a general plan to secrete the funds of Mr. Rosenthal in view of his impending death and the claim of the respondent for substantial tax deficiencies. Nor has he attempted to establish the existence of such a plan by offering evidence as to what happened to the other funds which the petitioner withdrew from the second Home Federal account and the Chicago Federal account, in excess of the amounts deposited in the Lincolnwood account. Therefore, we have not considered the possibility of the existence of such a plan in deciding whether to believe the petitioner's testimony that she returned the funds from the Marshall account to Mr. Rosenthal. Since there is no evidence tending to contradict her testimony, we are not disposed to disbelieve it solely on the basis suggested by the respondent. Moreover, Mrs. Rosenthal appeared to be a frank and honest witness at trial. Accordingly, we have concluded that her testimony is reliable and have found in accordance with that testimony.

This Court has frequently recognized that:

If a transferee reconveys the property to the transferor prior to the respondent's taking action to collect from the transferee, the transferee relieves himself of any liability, since the retransfer purges the fraud from the original transfer, the return of the property serving to leave the creditor in the same position he was in prior to the original transfer. * * * [*Robert Ginsberg*, 35 T.C. 1148, 1155–1156 (1961), affd. 305 F. 2d 664 (C.A. 2, 1962).]

See *Louise Noell*, 22 T.C. 1035 (1954), modified by 24 T.C. 329 (1955) ; *Fada Gobins*, 18 T.C. 1159 (1952), affirmed per curiam 217 F. 2d 952 (C.A. 9, 1954). In *Fada Gobins*, 18 T.C. at 1174, we said:

As to the retransfers, there was no preferring of any of [the transferor] Jelwan's creditors. Jelwan was not a general creditor, but the original owner of the property in question. The return of the property to him, to the extent of the property so returned, would, in logic at least, leave his creditors, including the United States, in the same position they were in prior to the transfer by him to the petitioner. It is, of course, possible that such a retransfer might be the result of collusion between the parties and made in such manner that it also would be in fraud of creditors. Such, however, was not the case in this instance. * * *

Although most of the cases in this Court dealing with the issue were decided prior to the Supreme Court's decision in *Commissioner* v. *Stern, supra,* they were not based on some Federal rule of transferee liability, but rather on an analysis of the law as developed

in State court proceedings. Accordingly, they are consistent with *Stern* and retain their vitality following that decision. We have found no indication that Illinois law differs on this point from the law as developed in other States. Therefore, we hold, in accordance with our prior cases, that as to the funds in the Marshall account, the petitioner is not liable as a transferee.

(2) When the petitioner withdrew the $10,000 in the second Home Federal account, there was, in effect, a transfer to her of $9,900 by her husband. All but $100 of such account had been provided by Mr. Rosenthal. However, the petitioner counters the respondent's assertion that she is liable as a transferee with respect to the Home Federal account with the argument that this "transfer" from Mr. Rosenthal to her was supported by full and adequate consideration.

We have found that between 1950 and 1958, the petitioner turned over to Mr. Rosenthal her weekly paycheck, part of which, pursuant to an understanding between them, he was to deposit in a savings account. The amounts so saved, the petitioner testified, were to be for the use of her and her husband "in later years." There is a dispute over whether Mr. Rosenthal was to save all of each check or only the difference between the amount of the check and the amount that he gave back to her. We have found that only the difference was to be saved by Mr. Rosenthal, since in subsequent years after she ceased giving her checks to her husband, the petitioner did not save all of her earnings but retained part of them, apparently for her personal needs. The evidence as to the amounts of her checks between 1950 and 1958 is not altogether clear, but on the basis of a reasonable estimate, we have found that the total amount of such checks was $21,116.01, and the amount to be saved was $12,453.51. So far as the record shows, however, Mr. Rosenthal did not save this money in accordance with the petitioner's understanding and desire, and there is no evidence that he used it for her benefit.

Our first question is whether the facts establish a bona fide debt owed by Mr. Rosenthal to the petitioner, and, if so, in what amount. The petitioner has the burden of proving the existence and amount of such debt. *Powers Photo Engraving Co.*, 17 T.C. 393 (1951), remanded per curiam on other grounds 197 F. 2d 704 (C.A. 2, 1952); *Estate of L. E. McKnight*, 8 T.C. 871 (1947); *Thompson v. Williams*, *supra.* On the basis of the whole record, we conclude that Mr. Rosenthal became indebted to the petitioner in the amount of $12,453.51. To hold otherwise, we would have to find that the petitioner made a gift of some or all of her earnings to Mr. Rosenthal. However, such an inference is inconsistent with her action in refusing to turn over her paycheck to her husband after she came to believe that he was not

dealing with her money in accordance with her desires and understanding, and with her expressed belief that he owed her the money. The better interpretation of the facts is that she turned her money over to him, for him to manage in accordance with her—not his— wishes, that this arrangement gave rise to a debtor-creditor relationship, and that by reason of his failure to heed her directions, Mr. Rosenthal became liable as a constructive trustee for the amount of money entrusted to him. See and compare *Scanlon* v. *Scanlon*, 6 Ill. 2d 224, 127 N.E. 2d 435 (1955).

The next question is whether, when the petitioner withdrew the $10,000 from the second Home Federal account, she obtained such funds in satisfaction of her debt against Mr. Rosenthal. To answer this question, we must determine to what extent, if any, the petitioner's $12,453.51 claim against her husband was satisfied by the $10,000 in the Marshall account. At trial, the petitioner testified that Mr. Rosenthal's stated reason for giving her the funds in the Marshall account was that he owed her the money by reason of her having given him her paychecks in earlier years. Did her acceptance of this money result in a pro tanto satisfaction of her claim? In view of the circumstances surrounding her subsequent retransfer of the money to him not long thereafter, we believe that although she accepted and deposited the money, it remained, by reason of his influence over her, subject to the control and command of Mr. Rosenthal. Since we have found that the petitioner did have a valid and subsisting claim against her husband, which both of them recognized, we see no explanation why she would return the money to him, particularly in light of his vagueness in explaining to her why he wanted it, unless she received it with the understanding that it was still subject to his call. Accordingly, we cannot find that the petitioner's temporary custody of the $10,000 deposited in the Marshall account accomplished a partial repayment of her husband's debt to her. However, even if our conclusion were otherwise on this point, we would nonetheless conclude that the retransfer of the $10,000 to him established a new debt in that amount.

Since the petitioner's claim was not affected by the funds in the Marshall account, we must next determine whether the withdrawal of the $10,000 from the second Home Federal account was intended to and did satisfy to that extent her claim or whether instead the transaction simply accomplished a gratuitous transfer from Mr. Rosenthal to her. See *Vietor* v. *Swisky*, 200 Ill. 257, 65 N.E. 625 (1902). We think the first interpretation of the evidence is the more satisfactory one. The petitioner clearly stated at trial that she considered the money in the second Home Federal account, the successor to the joint

savings account owned by the petitioner and her husband for many years, to be hers. Her testimony was as follows:

Q. [By counsel for the petitioner] Whose money was that [the $10,000 in the second Home Federal account]?

A. This was supposedly my savings which I, this was my savings.

Q. Did you consider that balance in the Home Federal Savings your husband's money, both your money, or your money?

A. Well, to be honest I considered it my money because I had worked all the way through and I considered it my money.

Whether the money in the account on February 11, 1963, was actually the money the petitioner had given her husband in earlier years, which seems highly unlikely, or was money which he put in the account from his own funds, this testimony, we think, shows that the petitioner considered that she was entitled to it. Accordingly, when she withdrew it from the account, it seems fair to conclude that she did so under a claim of right—in satisfaction of her supposed and actual claim—and not as a gift. Under all the circumstances, the $10,000 withdrawn by the petitioner was either actually, or by reason of a constructive trust, her property, or money of her husband's taken by her in satisfaction of a bona fide debt. Her husband's consent to such application of the funds may be implied from the fact that he put the money in a joint account. The money thus received by the petitioner could not be reached by creditors under Illinois law (*Thompson* v. *Williams*, *supra; Ramsey* v. *Nichols*, 73 Ill. App. 643 (1898)) and is not subject to the respondent's claim. *Elsie Januschke*, 48 T.C. 496 (1967) ; *Newman & Carey Subway Construction Co.*, 37 B.T.A. 1163 (1938).

The respondent does not deal with these authorities in his brief. However, he does contend that even a bona fide creditor who receives assets from an insolvent transferor in satisfaction of his claim may be held liable as a transferee unless the claim has priority over that of the Government. For this proposition, the respondent relies on two decisions of this Court. *Margaret Wilson Baker*, 30 B.T.A. 188 (1934), affd. 81 F. 2d 741 (C.A. 3, 1936) ; and *Powers Photo Engraving Co.*, *supra*, each contain dicta appearing to support this proposition. For two reasons, we are not persuaded by these authorities. First, as we stated at the outset, the controlling law on the issue of liability is that of Illinois, and we have found that under Illinois law a transferor may prefer one bona fide creditor without rendering the transfer fraudulent as to others; no affirmative showing of priority is required. Secondly, we believe that both cases relied on by the respondent are distinguishable on their facts from the case at bar. In *Baker*, the transfers were made in satisfaction of an alleged debt arising out of an agreement for future support; such agreements present a different question altogether

from the type of debt presented in the present case, both under our decisions (see *Fada Gobins, supra*) and Illinois law. E.g., *Davidson* v. *Burke*, 143 Ill. 139, 32 N.E. 514 (1892). Furthermore, the transferee failed to prove the value of the services rendered and therefore the amount of the alleged debt. In *Powers Photo Engraving*, the transferor was the wholly owned subsidiary of the transferee, and this Court found that the alleged debts satisfied by the transferor were in fact contributions to capital. However, we went on to say that even if the advances were in fact bona fide debts, the result would be the same. Our reasoning was that if a gratuitous transferee may not absolve itself of transferee liability by paying debts of the transferor which are not of a "priority character" (a proposition discussed more fully later), it should not be able to achieve a different result by paying an unsecured debt to itself. This reasoning was based on the parent-subsidiary relationship there involved and the control a parent has over a wholly owned subsidiary and did not purport to deal with a case like the one before us.

The respondent makes no mention of the Federal priority statute, 31 U.S.C. sec. 191, nor of its relevancy to a case involving transferee liability. Accordingly, we have no occasion to consider its applicability to this or any other issue presented in the present case.

(3) In determining whether the petitioner is liable as a transferee with respect to the automobile received by her on her husband's death, the question again is whether she received it in satisfaction of a bona fide claim. At the date of Mr. Rosenthal's death, the petitioner still had a claim against him for the difference between her original claim and the amount she withdrew from the second Home Federal account, i.e., $2,453.51. Under Illinois law, as we have previously outlined it, if the automobile was transferred to Mrs. Rosenthal in satisfaction of this remaining bona fide indebtedness, then she is not subject to transferee liability with respect thereto. Neither the stipulation nor the evidence at trial cast much light on how the petitioner acquired the automobile—whether as a creditor, a donee, an heir, a surviving joint tenant, or otherwise. However, we know that the automobile was purchased out of funds which Mr. Rosenthal stated really were the petitioner's; the implication is that the automobile was to be used by the two of them but was to be considered in partial satisfaction of his liability to her. Moreover, in an Illinois decision, where a husband was indebted to his wife and transferred property to her or for her benefit, it was presumed, apparently in the absence of direct testimony concerning his intention, that such transfer was on account of that indebtedness rather than a gift, and accordingly, could not be set aside as a fraudulent

conveyance. *Ramsey* v. *Nichols, supra* at 649. Applying the same presumption in the present case, we conclude that the petitioner received the automobile as a creditor, the consideration for the transfer being the satisfaction of the balance of her claim. Since the amount of this remaining balance equaled or exceeded the value of the automobile, the petitioner is not liable as a transferee for her husband's unpaid taxes with respect thereto.

(4) The petitioner apparently used part of the $4,100 bonus check received from her husband to pay his debts. We have frequently held that when a transferee receives property without consideration from an insolvent transferor and uses such funds to pay debts of such transferor, such payment does not absolve the transferee of liability for the transferor's taxes except to the extent that the debts so paid have priority over the Government's tax claim. E.g. *Fada Gobins, supra; Estate of L. E. McKnight, supra; Margaret Wilson Baker, supra; C. A. Hutton,* 21 B.T.A. 101 (1930), affd. 59 F. 2d 66 (C.A. 9, 1932). So far as we can discover, Illinois law does not dictate a different result. The petitioner has made no attempt to show that any of Mr. Rosenthal's debts paid by her out of the $4,100 transferred to her and had priority over the respondent's claim for unpaid taxes.[6] *Estate of L. E. McKnight, supra.* However, the respondent has conceded that the petitioner is not liable for her husband's taxes as a transferee of the $4,100 to the extent of the amount paid by her, $1,215.49, on their joint income tax liability for 1962. As to the balance of the $4,100 transferred to her, we hold that the petitioner is liable as a transferee for Mr. Rosenthal's taxes.

Summarizing our conclusions, then, we hold that the petitioner, Gertrude Rosenthal, is liable as a transferee for Mr. Rosenthal's income tax deficiencies and additions to tax for 1947 and 1948 only to the extent of the difference between the $4,100 transferred to her on December 24, 1962, and the amount she paid on account of the joint income tax liability of her and her husband, plus interest on such amount as provided by law.

> *Decision will be entered for the petitioner in docket No. 5291–66.*
>
> *Decision will be entered under Rule 50 in docket No. 5292–66.*

---

[6] We are aware of Ill. Ann. Stat. ch. 3, secs. 202, 205 (Smith-Hurd 1961), under which claim against a decedent's estate for funeral expenses have priority over claims for debts due the United States. However, the petitioner has failed to explain whether and how such provisions apply in the case of a transfer preceding the decedent's death.