Marvin Wiener v. Commissioner.
Wiener v. Commissioner
Docket No. 1871-68.
United States Tax Court
T.C. Memo 1971-56; 1971 Tax Ct. Memo LEXIS 276; 30 T.C.M. (CCH) 244; T.C.M. (RIA) 71056; March 29, 1971, Filed, *276 The petitioner, who was married during all of 1965, filed a return for that year which purported to be a joint return, but which was signed by him only. His wife did not know that the return was filed and did not consent to its being a joint return. The petitioner and his wife were subsequently divorced. Later, the respondent sent a check purporting to be a refund of overpaid taxes for that year to both the petitioner and his former wife. She actually received the check, cashed it by endorsing both of their names thereon, and kept the proceeds. Held, the 1965 income tax return filed by the petitioner was not a joint return; and the petitioner constructively received the proceeds of the check since it appears that he authorized his former wife to endorse his name and retain such proceeds. Nathan John Willner, for the petitioner. Frank N. Panza, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined a deficiency of $2,154.50 in the Federal income tax of the petitioner and his former wife, Evelyn Wiener (now Evelyn Shiner), for the taxable year 1965. Certain concessions having been made by both parties, the issues remaining for decision are: (1) Whether the Federal income tax return filed by the petitioner for 1965 qualifies as a valid joint return of the petitioner and his former wife; and (2) whether a refund check addressed by the respondent to the petitioner and his former wife subsequent to the filing of the petition herein can be considered *278 as a rebate made to him, even though such check was cashed by his former wife, and he received none of its proceeds. Findings of Fact Some of the facts have been stipulated, and those facts are so found. The petitioner, Marvin Wiener, maintained his residence in Elizabeth, New Jersey, when the petition was filed in this case. He filed a 1965 Federal income tax return with the district director of internal revenue, Newark, New Jersey. The return indicated that it was a joint return of Marvin and Evelyn Wiener, but it was signed only by the petitioner. The petitioner and the former Evelyn Wiener, now known as Evelyn Shiner, were married for about 15 years. Such marriage terminated in divorce in June 1968. When the income tax return for the year 1965 was prepared by the petitioner, his wife was recuperating from the effects of a serious accident. Although they had customarily filed joint returns in the past, she did not know whether a return, joint or otherwise, was filed for 1965 and never consented to the filing of such return. All of the income reflected on that return was earned by the petitioner alone. After he learned that the 1965 return was being andited, he attempted *279 to obtain a statement from his former wife to the effect that the return was a joint return, but she then refused to give such a statement. The respondent sent a deficiency notice dated February 2, 1968, to the petitioner and his former wife. The notice was sent to "Mr. Marvin Wiener and Mrs. Evelyn Wiener" at the address in Union, New Jersey, that appeared on the tax return. The petitioner alone filed a petition with this Court on April 26, 1968, seeking a redetermination of the deficiency. Such petition reflected that the petitioner's address at that time was in Elizabeth, New Jersey. It also alleged that the petitioner had already paid $954.28 to the district director. In fact, the respondent received from the petitioner an advanced payment of the proposed deficiency in the amount of $954.28 on May 9, 1968. At that time, the transcript of the petitioner's account for the taxable year 1965 in the records of the Internal Revenue Service did not reflect any unpaid taxes due from the petitioner. Therefore, the respondent issued a check, which he intended as a refund, dated July 18, 1968, in the amount of $954.28, made payable to "Marvin & Evelyn Wiener" and addressed to the Union, *280 New Jersey, address which appeared on the 1965 tax return. At the time of the mailing of the Government check, the petitioner's former wife was remarried and lived in Brooklyn, New York. However, during July 1968, she received such refund check in the mail. She 245 telephoned the petitioner and told him about the check; he told her to keep it. She endorsed such check with the names "Marvin Wiener," "Evelyn Wiener," and "Evelyn Shiner." The signature "Marvin Wiener" was written in a style similar to the appearance of the petitioner's actual signature and not in the usual handwriting of the former Mrs. Wiener. On July 24, 1968, she deposited $654.28 of the proceeds of that check in her joint account with Martin Shiner at Bankers Federal Savings and Loan Association and received the balance in cash. The petitioner actually received none of the proceeds of such check. Opinion We must determine whether the 1965 Federal income tax return filed by the petitioner was a valid joint return of him and his former wife, and whether the proceeds of the Government check can be considered as a rebate made to the petitioner and constructively received by him. At trial, counsel for the respondent *281 argued that this Court did not have jurisdiction to consider the latter question, but on brief the respondent argued the merits of the question and appears to have abandoned the jurisdictional argument. Section 6013, Internal Revenue Code of 1954, [1] provides that a husband and wife may make a single return jointly of income taxes, except in certain situations not here relevant. This Court has held that a joint return is possible when the signature of one spouse is lacking, if both spouses intended that the return be a joint return. Muriel Heim, 27 T.C. 270, 273 (1956), affd. 251 F. 2d 44 (C.A. 8, 1958); Hyman B. Stone, 22 T.C. 893, 900-901 (1954); W.L. Kann, 18 T.C. 1032, 1045 (1952), affd. 210 F. 2d 247 (C.A. 3, 1953), cert. denied 347 U.S. 967 (1954); Myrna S. Howell, 10 T.C. 859 (1948), affd. 175 F. 2d 240 (C.A. 6, 1949). However, when the nonsigning spouse did not authorize anyone to sign her name to the return, did not discuss the making and filing of the return, did not participate in the preparation of the return, and did not know that the return *282 had been filed, we have held that the return was not a joint return. Elsie Januschke, 48 T.C. 496, 500-501 (1967); Alma Helfrich, 25 T.C. 404, 407 (1955). In this case, the respondent has determined that the 1965 return was not a joint return, and the petitioner has the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111 (1933); Rule 32, Tax Court Rules of Practice. Compare W. L. Kann, supra, at 1045. The facts here with respect to this issue closely resemble those in Elsie Januschke, supra, and Alma Helfrich, supra.There is absolutely no evidence to indicate that the petitioner's former wife intended for the 1965 income tax return filed by the petitioner to be a joint return, or that she believed that a joint return had been filed. She was in fact completely oblivious of whether or not any tax return was filed for 1965. Under these circumstances, it seems manifestly clear that she did not intend to file a joint return for that year. See Elsie S. Bour, 23 T.C. 237, 239 (1954). Certainly, the petitioner, who ignored *283 this question completely in his brief and reply brief, has not met his burden of proof in this respect. The next question is whether the Government check for $954.28, made payable to the petitioner and his former wife, constituted a rebate to the petitioner which must be taken into account in arriving at the amount of the deficiency owed by him. See sec. 6211(b) (2); sec. 301.6211-1, Proced. & Admin. Regs. The respondent has conceded that if the petitioner never received the refund in question, either actually or constructively, then the amount thereof must be disregarded in computing the deficiency in this case. The check was made out to both the petitioner and his former wife, and it is undisputed that she cashed the check by signing the petitioner's name as well as her own, and that the petitioner did not actually receive any of its proceeds. However, the respondent contends that the petitioner constructively received such proceeds by authorizing his former wife to endorse the check and retain the proceeds. She testified that when she received the check, she telephoned the petitioner at his apartment, and he told her "he does not want to be bothered with me and I can keep it. *284 " On the other hand, the petitioner testified that the first time he learned of the check was when his counsel advised him of it in September, or 2 months after the check was received and cashed by his former wife. The petitioner has the burden of proof; yet, the only evidence offered by him is his 2456 general statement that he did not know of the check until informed by his attorney. He offered no specific testimony with respect to the alleged telephone conversation between him and his former wife. Since the respondent produced the testimony with respect to the telephone conversation and the authorization to keep the check, we feel that the petitioner should have specifically admitted or denied whether such conversation occurred, and if it did occur, he should have offered his recollection of what was said. We wonder why he failed to testify with respect to such conversation. If the telephone conversation did not take place, or if he did not authorize his former wife to retain the check, it would have been easy for him to have said so. In his brief, he attempts to explain his failure to give such testimony on the basis that he did not wish to antagonize his former wife and jeopardize *285 his relationship with his children, who were in her custody. However, that explanation is unconvincing, inasmuch as he is willing in his brief to charge her with perjury and forgery. His failure to be specific makes his general statement unconvincing, and in view of his failure to offer testimony which was available to him, we must resolve the doubts against him. Joseph F. Giddio, 54 T.C. 1530, 1535 (1970); W.A. Shaw, 27 T.C. 561, 573 (1956), affd. 252 F. 2d 681 (C.A. 6, 1958). Although Mrs. Shiner's testimony was somewhat general, we feel that it is more definite and more reliable than the generalizations offered by the petitioner. Her testimony does not indicate what she told him in that alleged conversation, and she admitted that the petitioner had not specifically told her that she could sign his name to the check. Nevertheless, she claims to have informed him that she had received a check of some kind, and he did direct her to keep it. Such a statement might reasonably be interpreted by her as an authorization to sign the check on his behalf; otherwise, his direction that she keep the check would have been meaningless. See 3 Am. Jur. 2d, Agency, sec. 71 *286 . He may have been unaware of the precise nature of the check, may have acted without sufficient knowledge, may not have intended to authorize her to keep such a large sum of money, and may have acted impetuously, but in view of his complete failure to offer specific testimony with respect to the conversation, we must accept her version of it. On the basis of the record before us, we have concluded that he did in effect authorize her to endorse his name on the check and retain the proceeds thereof. Thus, he constructively received its proceeds. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩